UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EDITH CARTWRIGHT,

        Plaintiff,

   v.

UNIVERSITY OF CALIFORNIA,
DAVIS, a public entity;
REGENTS OF THE UNIVERSITY OF
CALIFORNIA, DAVIS, as
individuals and in their
official capacity; SAL GENITO,
as an individual and in his
official capacity; ALLEN
TOLLEFSON, as an individual
and in his official capacity;
DENNIS SHIMEK, as an
individual and in his official
capacity; DANIEL GRAY, as an
individual and in his official
capacity; HUMBERTO GARCIA, as
an individual and in his
official capacity; JULIE
MCNEAL, as an individual and
in her official capacity,
LOUIE J. SLAYTON, as an
individual and in his official
capacity; DARRELL RALLS, as an
individual and in his official
capacity; AL MININE, as an
individual and in his official
capacity; AND DOES 1-110,

        Defendants.

2:05-cv-2439-MCE-KJM

MEMORANDUM AND ORDER

1

In this action, Plaintiff Edith F. Cartwright ("Plaintiff") seeks damages, including special, general, nominal, and punitive damages, from Defendant Regents of The University of California ("Regents"), Defendant University of California Davis,[1] and Defendants Dennis Shimek, Alan Tollefon, Sal Genito III, in both their official and individual capacities.

In her First Amended Complaint ("FAC"), Plaintiff contends she was subject to discrimination and retaliation by Defendants over a thirteen year period.  She claims this wrongful conduct ultimately resulted in her termination.  Plaintiff alleges violations of 42 U.S.C. § 1983, 42 U.S.C. § 1985, 20 U.S.C. § 1681(a), 42 U.S.C. § 1981, and 42 U.S.C. § 2000e.  In addition, California statutory claims pursuant to Civil Code §§§ 52.1, 51.9, 51.7, Government Code §§ 8547.10, 12900, Labor Code § 1102.5, are asserted, along with numerous other state common law claims.

Defendants now move to dismiss all of Plaintiff's claims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Alternatively, Defendants ask for a more definite statement as to certain claims in accordance with Rule 12(e).

///

///

///

---

[1] "Regents" collectively refers to University of California, Davis and Regents of The University of California, unless otherwise noted.

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

1    For the reasons set forth below, Defendants Motion is
2  granted in part and denied in part.[3]

3
4                          **BACKGROUND**[4]

5

6    Plaintiff, a Latina, Mexican-American, Native-American
7  homosexual female, began working for the University of
8  California, Davis in August 1987, as an employee in the Physical
9  Plant-Facilities-Operational Department.  Despite her repeated
10 complaints to various authorities, Plaintiff claims she was
11 subjected to a litany of discriminatory and retaliatory acts
12 based on her race, gender, and sexual preference during her
13 sixteen year tenure of employment with the University.

14   Shortly after being hired, Plaintiff alleges that two of her
15 male superiors began subjecting her to discrimination and
16 harassment.  The discrimination and harassment was ongoing and
17 ultimately prompted Plaintiff, in 1991, to file complaints with
18 the University, the Department of Fair Employment and Housing,
19 and the Yolo County Superior Court.  The University entered into
20 a written settlement agreement with Plaintiff under which
21 Plaintiff agreed to release her claims in return for $30,000 and
22 a promise by the University not to retaliate.

23 ///
24 ///

25

26    [3] Because oral argument will not be of material assistance,
   the Court orders this matter submitted on the briefs.  E.D. Cal.
27 Local Rule 78-230(h).

28    [4] The Court relies extensively on Plaintiff's FAC in 2:05-
   cv-2439-MCE-KJM in reciting the alleged facts of this case.

1    Three years later, in 1994, Plaintiff brought a new
2 discrimination and retaliation suit in Yolo County Superior Court
3 after she was allegedly passed over for a promotion in favor of a
4 less qualified candidate.  Plaintiff dismissed that suit after
5 being convinced to do so by a superior, Managing Service Officer
6 Andrea Ramiro.[5]  The dismissal was intended as a good faith
7 gesture in anticipation of a meeting Ms. Ramiro had scheduled for
8 Plaintiff with the University's Associate Vice Chancellor of
9 Human Resources, Dennis Shimek.  The meeting was presented to
10 Plaintiff as an opportunity to voice her concerns.  Plaintiff met
11 with Mr. Shimek, aired her grievances, and made several requests
12 related to working conditions and pay.  The University took the
13 requests under consideration, but two weeks later informed
14 Plaintiff that the requests were denied.

15    In 1995, Plaintiff interviewed with and was selected by an
16 independent hiring committee for Manager of Product Control
17 Development Team.  Although Plaintiff claims she was selected by
18 the hiring committee, she alleges that a less qualified white
19 male was offered the position.  That same year, Plaintiff
20 interviewed with and was selected by a different hiring committee
21 for the position of Customer Service Manager.  After five
22 interviews with Managing Agent Ralls, Plaintiff was eventually
23 offered the position.  In the third interview, Mr. Ralls
24 purportedly told Plaintiff because the committee had chosen her,
25 the best person for the job could not be hired.

26

27    [5] Plaintiff claims that Ms. Ramiro told her that "[l]ife at
28 the university will be much easier for you if you dismiss your
complaint" (FAC 14:24-25).

Mr. Ralls also told Plaintiff the candidate from New York was not selected because she was white.

Three years later, Plaintiff borrowed a plumbing tool for a weekend, as she claims was commonly done by University employees. One month after returning the tool, Mr. Ralls initiated an investigation into the incident.  According to Plaintiff, said investigation lasted three months, involved 300 interviews, and ultimately led to Plaintiff being suspended without pay for one week.

While on medical leave in September 2001, Managing Agent Genito gave Plaintiff's position and office to a junior employee, while failing to provide her with a new job title or description. When moving Plaintiff's office, Mr. Genito allegedly removed files, destroyed Plaintiff's copy of the 1991 settlement agreement, damaged Plaintiff's mineral and rock collection, coffee mug, and crystal vase, and removed Plaintiff's family portrait from its frame before breaking the frame and tearing the picture.

In December 2001, Plaintiff was in charge of implementing the "Fast Track Program," a program designed to ensure that minor repairs throughout the University campus were effectuated quickly.  According to Plaintiff, Defendants were intent on embarrassing Plaintiff and causing the program to fail from the beginning.  Mr. Genito told craftspeople "to design problems and ask Plaintiff employee how to solve them ... a competition to see who could 'stump'" Plaintiff (FAC 29:21-24).

///

///

Managing Agent Tollefson described the "Fast Track Program" as a "bunch of fucking rejects," the "the bad news bears," and "F Troop" (FAC 30:3-6).

Motivated by this continued mistreatment, Plaintiff filed a verbal complaint against Mr. Genito with Managing Agent Human Resources Supervisor Marion Randall, on February 3, 2002.  Three days later, Ms. Randall informed Plaintiff her complaint had been forwarded to the University's Associate Vice Chancellor of Human Resources, Dennis Shimek.  Mr. Shimek met with Plaintiff to discuss her complaint.  As a remedy, Plaintiff changed departments against her wishes.  Plaintiff alleges that her move in that regard was contingent on receiving pay equal to that received by Managing Agent Tollefson, obtaining leave time for continuing education, and on the understanding that her reassignment was temporary.  Seventy-two hours after Plaintiff switched departments, Plaintiff claims Ms. Randall told her the University would no longer adhere to these commitments.

Defendants' unwillingness to abide by the terms of their agreement prompted Plaintiff to file a complaint of discrimination and retaliation with the Equal Employment Opportunity Commission, Department of Fair Employment and Housing, and Defendant Regents' Department of Human Resources. Immediately thereafter, Managing Agent Manager of Human Resources Michael Garcia contacted Plaintiff to arrange a meeting.  At the meeting, Plaintiff stated she wanted to be reinstated in her old job.  Unwilling to provide an answer at the time, Mr. Garcia informed Plaintiff four weeks later she would not be able to return to her old job.

1   In February 2003, Mr. Genito instructed Plaintiff to
2   authorize and accept delivery of a new recycling dump-truck.
3   After research, Plaintiff discovered the dump-truck had serious
4   safety hazards and was less efficient and more expensive then the
5   current truck.  Plaintiff raised her concerns with Mr. Genito,
6   who in response cancelled a pre-arranged meeting and failed to
7   either follow-up or reschedule.  One month after first contacting
8   Mr. Genito, Plaintiff sent a comprehensive written report
9   regarding her concerns of the new dump-truck to Mr. Genito and
10  several other Managing Agents.  The following day, April 25,
11  2003, Plaintiff claims she was placed on investigatory leave.
12  Before placing Plaintiff on investigatory leave in March 2003,
13  Mr. Genito allegedly informed Plaintiff that she was being
14  investigated due to "rumors" of the following behavior: (1)
15  "hosting wild, lesbian sex parties at her house with [Managing
16  Agent Genito], (2) perform[ing] yard work in the nude, and (3)
17  fetch[ing] [her] newspaper topless" (FAC 44:7-14).  Said
18  investigation consisted of Managing Agent Lead Supervisor Robert
19  Bohn interviewing the Turf Crew[6] about such rumors.

20  In addition, Plaintiff alleges that on April 25, 2003, Mr.
21  Genito forced three subordinate employees to file workplace
22  grievances against Plaintiff, which were then backdated to April
23  16, 2003.  The three grievances triggered an investigation,
24  starting in July 2003, by Managing Agent June Taylor.
25  ///

26

27      [6] The Turf Crew was composed of Lead Groundsperson Roger
    Adamson, Equipment Operator Ted Adams, Equipment Operator Kevin
28  Galart, and Laborer Gary Simmons (FAC 44:17-18).

During the course of that investigation, none of Plaintiff's witnesses were interviewed and the three complainants were interviewed in the presence of Mr. Genito.  The investigation nevertheless led to Plaintiff receiving a "Notice of Intent to Dismiss," which accused Plaintiff of being disrespectful, disruptive, threatening, and unprofessional while interacting with several different subordinates and co-workers.  On November 10, 2003 Plaintiff was fired.

Following her dismissal, Plaintiff filed numerous complaints with Defendant Regents' "Whistler-blower Hotline."

**STANDARD**

**1.   Motion To Dismiss Under Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  A complaint will not be dismissed for failure to state a claim "'unless it appears beyond doubt that plaintiff can prove no set of facts in support of [his or] her claim that would entitle [him or] her to relief.'"  Yamaguchi v. Dep't of the Air Force, 109 F.3d 1475, 1480 (9th Cir. 1997) (quoting Lewis v. Tel. Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996)).

///

///

///

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend.  The Court should "freely give[]" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ."  Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment.  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

## 2.   Motion for a More Definitive Statement

Before interposing a responsive pleading, a defendant may move for a more definitive statement "[i]f a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading . . . ."  Fed. R. Civ. P. 12(e). A Rule 12(e) motion is proper when the plaintiff's complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted.  Gay-Straight Alliance Network v. Visalia Unified Sch. Dist., 262 F.Supp.2d 1088, 1099 (E.D. Cal. 2001).

Due to the liberal pleading standards in the federal courts embodied in Rule 8(e) and the availability of extensive discovery, courts should not freely grant motions for more definitive statements.  Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F.Supp. 940, 949 (E.D. Cal. 1981).  Indeed, a motion for a more definitive statement should be denied unless the information sought by the moving party is not available or is not ascertainable through discovery.  Id.

9

**ANALYSIS**

**1.   Claims for Relief Asserted Against Individual Defendants in Their Individual Capacity**

Defendants contend that all claims for relief asserted against individual Defendants in their individual capacity should be dismissed on grounds that the allegations in the FAC itself make it clear that "at all times, all defendants were engaged in the business of providing University services" and that ". . . each defendant was acting within the course and scope of said agency and employment" (FAC 5:5-6).  Essentially, Defendants argue that if claims against individual Defendants are based on actions taken within the scope of their employment, as alleged in the FAC, then they cannot be personally liable.  Defendants argument neglects to recognize Rule 8(e)(2), which allows alternative claims and inconsistent pleadings, both factually and legally. Indep. Enters. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1175 (3rd Cir. 1997).  Here, Plaintiff does alternatively allege that Defendants acted in their individual capacities.  Consequently, Defendants Motion to Dismiss all of Plaintiff's claims for relief against individual Defendants in their individual capacity is DENIED.

///
////
///
///
///
///

10

**2.   Doctrine of Res Judicata**

Both Defendants and Plaintiff acknowledge that Plaintiff filed a related lawsuit on January 14, 2003, in Yolo County Superior Court[7].  Defendants argue the Yolo County matter precludes the current matter on res judicata grounds.  Plaintiff disagrees.

"Res judicata, or claim preclusion, prohibits lawsuits on 'any claims that were raised or could have been raised' in a prior action.  Res judicata applies when there is: "(1) an identity of claims; (2) final judgment on the merits; and (3) identity or privity between parties." Margaret Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002) (citing Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001)).  All three elements must be satisfied to trigger application of the doctrine.

**I.   Identity of Claims**

The Ninth Circuit has articulated four factors to determine whether two claims are the same for purposes of res judicata: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same rights; and (4) whether the two suits arise out of the same transactional nucleus of facts.  In re: Imperial Corp. of Am., 92 F.3d 1503, 1506 (9th Cir. 1996).

_____

[7] Cartwright v. Bd. of Regents of the Univ. of Cal, CV 03-76.

11

1   The doctrine of res judicata "bars all grounds for recovery which
2   could have been asserted, whether they were or not." <u>Federated</u>
3   <u>Dep't Stores v. Moitie</u>, 452 U.S. 394, 399 (1981).  Therefore, the
4   last of the above four "criteria is the most important."
5   <u>Constantini v. Trans World Airlines</u>, 681 F.2d 1199, 1209 (9th
6   Cir. 1982).

7       Plaintiff's Yolo County lawsuit asserted claims premised on
8   retaliation and discrimination she allegedly suffered as an
9   employee of the University from August 1987 through January 14,
10  2003.[8]  Plaintiff's current lawsuit alleges claims of
11  discrimination and retaliation experienced from that same time
12  period, in addition to claims endured after January 14, 2003,
13  until she was fired on November 10, 2003.  Consequently, both
14  complaints share a common nucleus of facts, the alleged mis-
15  treatment between August 1987 through January 14, 2003.
16  Accordingly, the evidence used to prove Plaintiff's claims
17  arising from the events occurring between August 1987 through
18  January 14, 2003, is substantially overlapping in both lawsuits.
19  Both lawsuits assert that Plaintiff's rights were violated as a
20  result of discrimination and retaliation during the same time
21  period.

22      Plaintiff's attempt to distinguish the Yolo County matter
23  from the current matter, by pointing to additional claims for
24  relief asserted in the present lawsuit, is unavailing.

25

26

27      [8] "That related matter was filed in 2003 before Cartwright
    was terminated and seeks damages only for pre-termination
28  retaliation and discrimination..." (Pl.'s Reply 6:10-12).

Instead, the relevant inquiry must be whether the Plaintiff could have brought her current claims for relief, based on facts occurring prior to January 14, 2003, in the Yolo County proceedings.  That question can only be answered in the affirmative.  All claims for relief premised on events occurring before January 14, 2003, were known at the time of filing and could have been pleaded in the Yolo County lawsuit.

## II.  Final Judgment on the Merits

Application of res judicata does not require literal adjudication on the merits.  For the purpose of res judicata a final judgment on the merits is interchangeable with a dismissal with prejudice.  Margaret Stewart, supra, 297 F.3d at 956; see also Rule 41(b).  Final judgment was reached in the Yolo County proceeding, because each claim was either dismissed with prejudice, subjected to demurre without leave to amend, or subjected to dismissal upon summary judgment, all against the Plaintiff.[9]

## III.  Identity of Parties

Identity of parties exists when "the person being estopped from relitigating an issue . . . [was a] party to the prior lawsuit or . . . so closely related to the interest of the party to be fairly considered to have had his day in court."

///

///

---

[9] According to the Defendants and undisputed by the Plaintiff, in the Yolo County lawsuit claims two through six were dismissed with prejudice, the court granted Defendants demurrer without leave to amend regarding claim eight, and summary judgment was granted on claim one and seven in favor of the Defendants (Defs. Mot. 6:11-19).

1  In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir. 1983) (citing

2  Chicago, Rock Island and Pac. R.R. Co. v. Schendel, 270 U.S. 611,

3  618 (1926)).  There is no dispute that Plaintiff was a party to

4  the Yolo County action, she was the plaintiff in that proceeding.

5  Applying the above standard, the Court is confident that identity

6  of the parties exists between the current lawsuit and the Yolo

7  County lawsuit.

8       According to the doctrine of res judicata, Plaintiff is

9  estopped from asserting a claim for relief based on alleged facts

10 arising before January 14, 2003, the date her Yolo County lawsuit

11 was filed.  Defendants Motion to Dismiss, on res judicata grounds

12 must nonetheless be DENIED, however, inasmuch as Plaintiff may

13 properly state claims for relief derived from accusations

14 occurring after January 14, 2003.

15

16 **3.   Exhaustion of Administrative Remedies**

17      Defendants also move to dismiss all of Plaintiff's Claims

18 for Relief for failure to exhaust administrative remedies.

19 Defendants' argument is twofold.  First, Defendants assert that

20 Plaintiff failed to seek a writ of mandate following the

21 University's final decision regarding official written complaints

22 filed by Plaintiff regarding pre-termination discrimination and

23 retaliation, as well as her termination.

24 ///

25 ///

26 ///

27 ///

28 ///

Second, Defendants contend that all of Plaintiff's state and common law claims are required, jurisdictionally, to be completely exhausted through Defendant Regent's internal grievance procedures prior to filing any lawsuit against the University.[10]

In support of their first argument, that Plaintiff's current action is barred by her failure to seek a writ of mandate following final action by the University, Defendants cite <u>Miller v. County of Santa Cruz</u>, 39 F.3d 1030 (9th Cir. 1994).  In <u>Miller</u>, the Ninth Circuit addressed the issue of whether "unreviewed findings of state administrative tribunals are entitled to preclusive effect in a subsequent § 1983 action in federal court." <u>Miller v. County of Santa Cruz</u>, 39 F.3d  at 1032. The court concluded:

> California has made it quite clear that a discharged [employee] who elects an administrative forum for review of his or her termination must succeed in overturning that administrative decision through the judicial mandamus review procedure prior to filing a suit for damages on claims arising of the termination.  So long as the minimum criteria of <u>Utah Construction</u> are met, we will defer to the considered judgment of the courts of California ...

---

[10] Although the Court realizes Defendants brought this motion under Rules 12(b)(6) and 12(e), the Court finds it is more accurate, for purposes of analyzing Defendants second argument for dismissal under the California doctrine of exhaustion of remedies, to treat this motion under Rule 12(b)(1). The California Supreme Court has repeatedly stated that exhaustion of administrative remedies is a "jurisdictional prerequisite to resort to the courts." <u>Campbell v. Regents of Univ. of Cal.</u>, 35 Cal. 4th at 322; <u>Johnson v. City of Loma Linda</u>, 24 Cal.4th at 70; <u>Abelleira v. District Court of Appeals</u>, 17 Cal.2d at 293. Therefore, the Court is permitted to itself review any evidence, including declarations and testimony, in making its decision regarding Defendants second argument under a Rule 12(b)(1) analysis. <u>McCarthy v. U.S.</u>, 850 F.2d 558, 560 (9th Cir. 1988).

1  Id. at 1038.

2       The Miller court's holding makes it clear, then, that
3  pursuit of judicial mandamus as a prerequisite for bringing a
4  civil lawsuit hinges on the criteria identified by the Supreme
5  Court in U.S. v. Utah Construction & Mining Co., 384 U.S. 394
6  (1966) being adequately satisfied.  Defendants do not, however,
7  address what the Utah Construction criteria are or how they have
8  been satisfied under the current circumstances.  Consequently,
9  Defendants' first argument for dismissal under the doctrine of
10 exhaustion of remedies must fail.

11      Defendants next contend that Plaintiff was jurisdictionally
12 required to exhaust all internal University grievance procedures
13 before asserting state and common law claims in the current
14 lawsuit.  Vital to analyzing Defendants position is understanding
15 the legal authority of Defendant Regents.  Authorized by the
16 California Constitution, Defendant Regents is "a public trust
17 . . . with full powers of organization and government." Cal.
18 Const. Art. IX, §9, subd. (a).  Given those powers, "policies
19 established by the Regents as matters of internal regulation may
20 enjoy a status equivalent to that of state statutes." Campbell v.
21 The Regents of The Univ. of Cal., 35 Cal. 4th 311, 320 (2005).
22 Defendant Regents' authority has hence "been characterized as 'a
23 branch of the state itself' or 'a statewide administrative
24 agency.'" Id. at 321 (quoting Regents of Univ. of Cal. v. City of
25 Santa Monica, 77 Cal.App.3d 130, 135 (1978).  Ultimately,
26 Defendant Regents may create internal policies, and any such
27 "policy is treated as a statute in order to determine whether the
28 exhaustion doctrine applies." Id. at 321.

1    Under California law, "where an administrative remedy is

2  provided by statute, relief must be sought from the

3  administrative body and this remedy exhausted before the courts

4  will act." Id. at 321 (quoting Abelleira v. District Court of

5  Appeal, 17 Cal.2d 280, 292 (1941).  Providing greater clarity,

6  the California Supreme Court stated: "exhaustion of

7  administrative remedy is a 'jurisdictional prerequisite to resort

8  to the courts'" that is not open to judicial discretion, but

9  rather a "fundamental rule of procedure." Id. at 321 (quoting

10  Johnson v. City of Loma Linda, 24 Cal.4th 61, 70 (2000)).

11    According to the above authority, then, internal regulations

12  established by the University are deemed statutes for the purpose

13  of applying the doctrine of exhaustion of administrative

14  remedies.  Defendant Regents' internal grievance procedure,

15  denominated "Personnel Policies for Staff Members ("PPSM"),

16  Policy No. 70" is the procedure applicable to the controversy

17  presently before the Court.[11]  PPSM Policy No. 70 provides

18  University employees a means to file written complaints regarding

19  "specific management act[s] which [are] alleged to have adversely

20  affected the employee's existing terms or conditions of

21  employment" (Ex. "C" of Decl. of Steven Drown).  PPSM Policy No.

22  70 includes three steps, including the employee's initial request

23  for review.

24  _____

25    [11] Defendants have requested that the Court judicially
   notice the Regents internal grievance procedure, Personnel
26  Policies for Staff Members, Policy No. 70, in addition to
   Plaintiff's filed grievance dated December 1, 2003 regarding her
27  termination, and Kathleen Moore, Vice Chancellor of Facilities
   Operation and Maintenance, written response to Plaintiff's
28  December 1, termination grievance. These requests were unopposed
   and are hereby GRANTED.

1    Defendants contend Plaintiff failed to exhaust all remedies
2    available through PPSM Policy No. 70.  Defendants have produced
3    evidence that Plaintiff filed two formal written complaints,
4    regarding her complaints of alleged discrimination, retaliation,
5    and wrongful termination, pursuant to PPSM Policy No. 70 (See Ex.
6    "A1" & "B1" of Steven Drown's Dec.).  According to Defendants,
7    however, Plaintiff completed only the first step of PPSM No. 70,
8    because she failed to pursue appeals available under the
9    regulation.  Defendants therefore argue that Plaintiff did not
10   exhaust all internal remedies as required.

11   At the request of the Court, Plaintiff submitted a
12   declaration putting forth all administrative remedies she sought
13   before filing her current FAC.  In said declaration, Plaintiff
14   asserts that she filed various complaints to the University's
15   Human Resource Department, the California Department of Fair
16   Housing and Employment, the Equal Employment Opportunity
17   Commission, and the Yolo County Superior Court (Pl's Decl.
18   Regarding Administrative Remedies Exhausted).  However, Plaintiff
19   unsuccessfully addressed Defendants' specific argument that she
20   failed to exhaust all grievance procedures available through the
21   University's PPSM Policy No 70, as required under California law.
22   Plaintiff did not put forth evidence, or even assert, that she
23   appealed either of her two written complaints filed under the
24   University's internal regulation, PPSM Policy No. 70.
25   ///
26   ///
27   ///
28   ///

Based on Plaintiff's failure to show she exhausted all of the University's internal grievance procedures, the Court finds that the Court lacks jurisdiction over Plaintiff's state and common law claims, alleged against Defendant Regents and individual Defendants in their official capacity.  Consequently, Defendants' Motion to Dismiss Plaintiff's state and common law claims, insofar as they pertain to Defendant Regents and individual Defendants in their official capacity, is GRANTED.[12]

**4.   Motion to Dismiss 42 U.S.C. §§ 1983, 1985 Claims**

Defendant Regents and individual Defendants, in their official capacity, argue they are immune from liability under 42 U.S.C. §§ 1983 and 1985 ("Section 1983" and "Section 1985"), and thereby assert that dismissal of Plaintiff's First and Third Claims for Relief is proper.  Section 1983 provides, in pertinent part, that "[e]very person who, under the color of [the law] . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, immunities secured by the Constitution or law, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.  Section 1985, similar to Section 1983, prohibits conspiracies to interfere with another person's Constitutional or federal statutory rights.  42 U.S.C. § 1985.  Plaintiff does not oppose Defendants' motion.

---

[12] The remaining state and common law claims will be addressed as only pertaining to individual Defendants in their individual capacity.  It is not necessary to further address other arguments posited by the parties concerning the state and common law claims asserted against Defendant Regents or individual Defendants in their official capacity.

Therefore, Defendants' Motion to Dismiss Plaintiff's First and Third Claims for Relief, as pertaining to Defendant Regents and individual Defendants in their official capacity, is GRANTED. Plaintiff's First and Third Claims for Relief against individual Defendants in their individual capacity, however, remain viable and that liability must consequently be addressed.

The individual Defendants argue Plaintiff has failed to identify any cognizable right under the First, Fourth, or Fourteenth Amendments sufficient to maintain a claim under Section 1983 or Section 1985 against them in their individual capacities. In response, Plaintiff correctly points out because Section 1983 and Section 1985 are applicable to redress violations of both Constitutional and federal statutory law, an argument limited to Constitutional claims does not dispose of her Section 1983 and Section 1985 claims for relief. Plaintiff has sufficiently pled violations of federal statutory law, 20 U.S.C. § 1681, 42 U.S.C § 1981, and 42 U.S.C. § 2000e, which may properly underscore Section 1983 and Section 1985 claims.

Individual Defendants in their individual capacities also argue that Plaintiff cannot maintain a viable Section 1985 claim due to the "intra-corporate conspiracy doctrine." Under the doctrine, conspiracies in civil rights actions cannot lie where individual members of the same governmental entity are alleged to have conspired with each other while acting within the scope of their employment. <u>Blunt v. County of Sacramento</u>, 2006 U.S. Dist. LEXIS 11099 (E.D. Cal. 2006). Plaintiff rebuts Defendants' argument by pointing out that individual Defendants in their individual capacities are not part of the same entity or acting

within the scope of their employment, as required for application

of the doctrine.  Plaintiff is correct; the intra-corporate

doctrine applies to defendants acting within the scope of their

employment.  At the current stage of this lawsuit, it is unknown

whether individual Defendants were acting within the scope of

their employment or not.  Therefore Defendants' argument must

fail.

Consequently, individual Defendants' Motion to Dismiss

Plaintiff's First and Third Claims for Relief is DENIED.

**5.   Motion for More Definite Statement Regarding 42 U.S.C. §
      1983 Claim**

Alternatively, individual Defendants in their individual

capacity argue for a more definite statement under Rule 12(e)

regarding Plaintiff's First Claim for Relief pursuant to Section

1983.  Plaintiff has pled violations of specific federal

statutes, facts leading to such violations, and the involvement

of each individual Defendant.  While Plaintiff's Complaint is by

no means a model of clarity, the Court nonetheless cannot say

that it is so vague and ambiguous that individual Defendants in

their individual capacities cannot frame a responsive pleading.

Indeed, "a short and plain statement" of the claim showing that

the pleader is entitled to relief is all the Plaintiff is

required to include in her Complaint.

Further, Defendants do not claim that "the information

sought by the moving party is not available and is not

ascertainable through discovery."

///

1  Famolare, Inc., 525 F. Supp. at 949.  Accordingly, Defendants'
2  Motion for a More Definite Statement on Plaintiff's First Claim
3  for Relief is DENIED.

4

5  **6.   Motion to Dismiss 42 U.S.C. § 1981 Claim**

6

7      All Defendants move to dismiss Plaintiff's Seventh Claim for
8  Relief, which alleges a violation of 42 U.S.C. § 1981 ("Section
9  1981").  Section 1981 ensures that "[a]ll persons . . . shall
10 have the same right in every State or Territory to make and
11 enforce contracts, to sue, be parties, give evidence, and to the
12 full and equal benefits of all laws and proceedings for the
13 security of persons and property . . ." 42 U.S.C § 1981.
14 Defendants assert four grounds for dismissal of Plaintiff's
15 Seventh Claim for Relief.

16     First, Defendants argue that Plaintiff failed to plead that
17 her Section 1981 rights had been violated as a result of an
18 official policy or custom of Defendants.  To assert a viable
19 Section 1981 claim ". . . against a state actor, a claimant must
20 show that the violation of his right to make contracts protected
21 by section 1981 was caused by a custom or policy within the
22 meaning of Monell and subsequent cases."[13]
23 ///

24

25     [13] In Monell v. Dep't of Soc. Serv.,436 U.S.658, 694 (1978),
   the Supreme Court stated: a local government may not be sued
26 under § 1983 for an injury inflicted solely by its employees or
   agents.  Instead, it is when execution of a government's policy
27 or custom, whether made by its lawmakers or by those whose edicts
   or acts may fairly be said to represent official policy, inflicts
28 the injury that the government as an entity is responsible under
   § 1983.

1 Oaks v. City of Phila., 59 Fed. Appx 502, 503 (3rd Cir. 2003);

2 see, Fed'n of African Am. Contrs. v. City of Oakland, 96 F.3d

3 1204, 1215 (9th. Cir. 1996).

4     Paragraph eight and nine in Plaintiff's FAC pleads

5 sufficient facts, at least for the purpose of a motion to

6 dismiss, to show a custom of sexual harassment, harassment, and

7 discrimination in the Physical Plant-Facilities-Operational

8 Department at the University of California, Davis, where

9 Plaintiff was employed.

10     Next, Defendants contend Section 1981 applies to claims of

11 discrimination based solely on race.  Defendants argue

12 Plaintiff's Section 1981 claim must fail because she pleads "a

13 scheme which inextricably intertwines racial, age, sexual

14 orientation, and sex discrimination" (Def.s' Reply 7:26-27).

15     In Margaret Miller v. Bank of Am., 600 F.2d 211 (9th Cir.

16 1979), the plaintiff alleged she had been discriminated against

17 because of her race and sex in violation of both Title VII and

18 Section 1981.  The Ninth Circuit found that the district judge

19 mistakenly rejected the plaintiff's Section 1981 case on grounds

20 that both race and sex discrimination were alleged, stating that

21 the plaintiff's Section 1981 claim survived regardless of her

22 interlinked claim of sex discrimination.  Section 1981 simply

23 requires the presence of some alleged racial discrimination, not

24 an exclusively racial claim.  Id. at 213 (citing League of

25 Academic Women v. Regents of the Univ. of Cal., 343 F.Supp. 636,

26 638-640 (N.D. Cal. 1972).  Accordingly, the Court finds no

27 requirement that Section 1981 claims be based solely on race

28 discrimination.

1    Third, Defendants argue Plaintiff failed to plead facts

2 showing interference, based on race, with a contractual

3 relationship.  Defendants assert that because Plaintiff's

4 employment is instead based on statute, a Section 1981 claim

5 established on her employment is improper.  Defendants' argument

6 consequently rests on the contention that Plaintiff's employment

7 is governed by statute, not contract, a fact not disputed by

8 Plaintiff.[14]

9    In Judie v. Hamilton, the Ninth Circuit affirmed summary

10 judgment for a Washington State Hospital regarding a Section 1981

11 claim asserted by a former employee whose job was controlled by

12 statute.  872 F.2d 919 (9th Cir. 1989).  In Judie, the court

13 stated:

14           If the terms of public employment affecting
             compensation, layoffs, and reemployment do
15           not create contractual expectancies, then we
             do not believe that Judie's job description
16           creates contractual expectancies either.
             Judie, therefore has not established a
17           cognizable claim for violation of the right
             to contract under section 1981.  Id. at 923.

18

19    In Barefield v. Cal. State Univ. Bakersfield, a case decided

20 by this District, the court applied the same reasoning in Judie

21 when dismissing a California State University Bakersfield

22 employee's Section 1981 claim based on her employment.

23

24 _____

25     [14] Defendants cite to, Miller v. State of Cal., 18 Cal.3d
   808, 813 (Cal. 1977) (holding public employment in California "is
26 not held by contract but by statute and that, insofar as the
   duration of such employment is concerned, no employment has vest
27 contractual right to continue in employment beyond the time or
   contrary to the terms and conditions fixed by law"); Kim v.
28 Regents of Univ. Of Cal., 80 Cal.App.4th 160, 165 (App. Ct.
   2000).

1  2006 U.S. District Lexis 21677 (2006).  The Barefield court

2  concluded that because the plaintiff's employment was governed by

3  statute, she had no Section 1981 claim.  Although the Ninth

4  Circuit has not ruled directly on the issue of whether California

5  State employees, whose employment is governed by statute, can sue

6  based on their employment under Section 1981, the Court finds

7  Judie and Barefield persuasive.  Accordingly, the nature of

8  Plaintiff's employment precludes her Section 1981 claim with

9  respect to her employment itself.

10      The fact that Plaintiff cannot assert a Section 1981 claim

11  on the basis of her employment standing alone does not end the

12  inquiry, however, since a Section 1981 may be predicated on other

13  contractual bases.  Examination of the FAC in fact shows that

14  other contracts are identified: (1) 1991 settlement agreement;

15  (2) 1994 oral agreement between Plaintiff, Mr. Shimek, and Ms.

16  Ramioro; and (3) February 8, 2002, oral agreement between

17  Plaintiff, Mr. Shimek, and Ms. Randall.  Defendants have not

18  demonstrated why Plaintiff's Section 1981 claim is not properly

19  premised on the above three contracts.  Consequently, Plaintiff

20  has adequately identified a contractual relationship as required

21  by Section 1981, at least for purposes of surviving a motion to

22  dismiss.

23      Finally, Defendants argue Plaintiff failed to plead

24  sufficient facts to allow Defendants to frame a responsive

25  pleading.

26  ///

27  ///

28  ///

25

In the FAC, Plaintiff pleads facts showing the existence of the three different contracts, she identifies herself as a Latina, Mexican American, and Native American, and she pleads numerous incidences of alleged discrimination and harassment.  The Court recognizes Plaintiff has pled little in the way of facts specifically directed towards racial discrimination. Nonetheless, based on a liberal reading of Plaintiff's FAC, as required by Rule 12(b)(6), the Court finds Plaintiff sufficiently asserted a viable claim under Section 1981.

Based on the above authority, Defendants Motion to Dismiss Plaintiff's Seventh Claim for Relief is DENIED.

**7.   Motion to Dismiss 20 U.S.C. § 1681 Claim**

Defendants move to dismiss Plaintiff's Sixth Claim for Relief, 42 U.S.C. § 1681 ("Title IX").  Title IX provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Defendants assert two grounds for dismissal of Plaintiff's Sixth Claim for Relief.

First, Defendants contend that Plaintiff has failed to plead facts giving rise to a Title IX claim.  Specifically, Defendants argue that Plaintiff omitted facts that show she was a "*participant or applicant* of any education program or activity receiving federal financial assistance" (Def.'s Mot. 14:3-4) as required by Title IX.

According to Defendants, Plaintiff's employment with the University is insufficient to assert a Title IX claim.  In support of this proposition Defendants rely on the dissent of <u>N. Haven Bd. of Educ. v. Bell</u>, 456 U.S. 512 (1982) (Powell, J., dissenting).

In response to Defendants' argument, Plaintiff cites to <u>N. Haven's</u> majority opinion, which explicitly states that "employment discrimination comes within the prohibition of Title IX." <u>Id</u>. at 530.  Based on the Supreme Court's clear language in <u>N. Haven Bd. of Educ.</u>, the Court finds that Plaintiff has adequately pled facts to assert a Title IX Claim for Relief.

Second, individual Defendants, in both their individual and official capacities, move to dismiss Plaintiff's Title IX claim on grounds that only institutions may be liable under Title IX, not individuals.  Plaintiff failed to address individual Defendants' argument.  Accordingly, individual Defendants Motion to Dismiss Plaintiff's Sixth Claim for Relief, insofar as it pertains to individual Defendants in both their official and individual capacities, is GRANTED.

**8.   Motion to Dismiss 42 U.S.C. § 2000e Claim**

Individual Defendants argue that all individuals are immune from liability under 42 U.S.C. 2000e ("Title VII"), and therefore assert that Plaintiff's Eighth Claim for Relief should be dismissed against individual Defendants in both their individual and official capacities.  Title VII prohibits discrimination based on race, color, sex, or national origin in employment, as well as retaliation of employees who oppose such discrimination.

1   42 U.S.C. § 2000e.  Plaintiff has not opposed Defendants'

2   argument with respect to the liability of individual Defendants

3   in their individual capacities.  Defendants' Motion to Dismiss

4   Plaintiff's Eighth Cause of Action in that regard is therefore

5   GRANTED.

6       The Title VII liability of individual Defendants in their

7   official capacities, however, remains at issue.  Both Plaintiff

8   and Defendants rely on Miller v. Maxwell, 991 F.2d 583 (9th Cir.

9   1993), in their respective arguments.  The Miller Court held that

10  Title VII liability does not extend to individual employees.

11  Defendants construe this rule as prohibiting liability against

12  all individuals, in both individual and official capacities.

13  Conversely, Plaintiff interprets the Miller rule as limited to

14  individual employees sued in their individual capacities, leaving

15  individuals in their official capacities open to liability.

16      The parties' disputed interpretation of Miller can, however

17  easily be resolved by examining later Ninth Circuit decisions.

18  Cases subsequent to Miller clearly state that individuals,

19  whether sued in their representative or individual capacities,

20  are not liable under Title VII.  In Holly D. v. Cal. Inst. of

21  Tech., 339 F.3d 1158, 1179 (9th Cir. 2003) the Ninth Circuit

22  explained that "we have consistently held that Title VII does not

23  provide a cause of action for damages against supervisors or

24  fellow employees."

25  ///

26  ///

27  ///

28  ///

28

See also <u>Guinn v. San Bernardino County</u>, 43 Fed. Appx. 136, 137

(9th Cir. 2002) (concluding that "the district court properly

dismissed the claim against Guinn's supervisor, Steven Harrison,

because civil liability under Title VII is limited to the

employer."); <u>McKinney v. Boyd Gaming Corp.</u>, 12 Fed. Appx. 599,

601 (9th Cir. 2001)(holding that "Title VII claims can only be

brought against employers, not co-employees.")

Given the above authority, the Court finds Defendants'

interpretation of <u>Miller</u> to be accurate.  Consequently,

Defendants Motion to Dismiss Plaintiff's Eighth Claim for Relief,

insofar as it pertains to individual Defendants in their official

capacities, is also GRANTED.  Plaintiff's Title VII claim against

Defendant Regents, however is not affected by the present motion.

**9.    Motion to Dismiss California Civil Code § 52.1 Claim**

Defendants assert two grounds to dismiss Plaintiff's Second

Claim for Relief, for violation of California Civil Code § 52.1

("Section 52.1").  Section 52.1 provides a private right of

action if "a person or persons . . . interferes by threats,

intimidation, or coercion, or attempts to interfere by threats,

intimidation, or coercion, with the exercise or enjoyment by any

individual or individuals of rights secured by the Constitution

or laws of the United States, or . . . laws of this state."

First, Defendants argues Section 52.1 is part of The Unruh Act,

which does not apply to the employee-employer relationship.

///

///

29

Second, Defendants contend that Plaintiff failed to plead facts that Defendants committed violence or threats of violence against Plaintiff, as required by Section 52.1.

Defendants' first grounds for dismissal of Plaintiff's Second Cause of Action, that the Unruh Act does not apply to the employer-employee relations, rests entirely on Section 52.1 falling under The Unruh Act.[15]

Section 52.1 is part of the Tom Bane Act.  Stamps v. Super. Ct. of L.A., 136 Cal.App.4th 1441 (2006).  The Unruh Act consists only of Civil Code § 51.  Id.; Alch v. Super. Ct., 122 Cal.App.4th 339, 395 (2004); Gatto v. County of Sonoma, 98 Cal.App.4th 744, 747 (2002); Cal. Civ. Code § 51(a).  In Stamps, the Court held there is no bar to asserting violations under Section 52.1 in employment cases, because the statute is not part of The Unruh Act.  In reaching its conclusion, the Stamps court noted that Section 52.1 was enacted in 1987 as part of the Tom Bane Civil Rights Act.  Id. at 1447.  The Tom Bane Civil Rights Act was created with the purpose of "'fill[ing] in the gaps left by the Ralph Act' by allowing an individual to seek relief to prevent the violence from occurring before it was committed and providing for filing of criminal charges."  Id.

---

[15] Cal. Civ. Code § 51 provides:

(a) This section shall be known, and may be cited, as the Unruh Civil Rights Act.

(b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

As both Stamps and the Plaintiff correctly identify, Section 52.1 on its fact contains no restriction to certain types of cases, as opposed to the Unruh Act, which applies only to business establishments.  Id. at 1457; Cal. Civ. Code § 51(b).

Based on the given authority, the Court finds that Section 52.1 is not part of The Unruh Act.  Therefore Defendants first argument with respect to the violation of Plaintiff's Second Claim for Relief must fail.

Defendants also argue, however, that Plaintiff failed to plead allegations that Defendants committed violence or threats of violence against the Plaintiff, as required by Section 52.1. According to Defendants "[t]o state a cause of action under Section 52.1 there must first be violence or intimidation by threats of violence" (Def.'s Mot. 8:26-27).[16]  In rebuttal, Plaintiff argues that the clear language of Section 52.1 contains no requirement of violence.  According to Plaintiff, Section 52.1 protects against attempted or actual interference by threats, intimidation, or coercion, based on a plain reading of the statute.

Section 52.1 does not define the term "threats," and also provides no definition for either "intimidation" or "coercion" as used in the statute, although subdivision (j) does state that "speech alone is not sufficient to support an action" unless "the speech itself threatens violence." Cal. Civ. Code § 52.1(j). ///

---

[16] In support of their proposition, Defendants quote to Winarto v. Toshiba Am. Elec. Components, Inc., 274 F.3d 1276, 1289 (9th Cir. 2001). The Court found no such statement in the Winarto decision.

Nevertheless, by its terms, Section 52.1 does not require violence or threat of violence.  Cole v. Doe, 387 F.Supp.2d 1084, 1103 (N.D. Cal. 2005).

In Venegas v. County of L.A., 32 Cal. 4th 820 (2004), the California Supreme Court concluded that plaintiff had asserted a viable claim for relief, under Section 52.1 for an unreasonable search and seizure, even though the police did not use excessive force in performing the search and seizure.  See also Jones v. Kmart Corp., 17 Cal. 4th 329, 334 (1988) (noting that Section 52.1 does require an attempted or completed act of interference with a legal right, accompanied by a form of coercion). Consequently, the California Supreme Court, in both Venegas and Jones, did not interpret the statute to mandate a threat of or act of violence to assert a viable claim under Section 52.1.  In interpreting Section 52.1, the Venegas Court included no reference to violence, but rather stated that "Section 52.1 does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right." Venegas, 32 Cal. 4th at 843.

Based on the above authority, the Court finds that Section 52.1 does not require a threat of or act of violence to properly assert claim for relief under the statute.  Accordingly, Defendants' Motion to Dismiss Plaintiff's Section 52.1 Claim for Relief is DENIED.

///

///

///

1 **10.   Motion to Dismiss Plaintiff's California Government Code §**
2 **8547.10 Claim**

3       Individual Defendants in their individual capacities move to

4 dismiss Plaintiff's Fourth Claim for Relief pursuant to

5 California Government Code § 8547.10 ("Section 8547.10").

6 Section 8547.10 provides a private right of action, specifically

7 for University of California employees who report improper

8 activity and then suffer from either discrimination or

9 retaliation due to said reporting.  Cal. Govt. Code § 8547.10.

10 Defendants' argument for dismissal is twofold.  First, Defendants

11 assert Plaintiff did not plead the mandatory requirements of a

12 viable claim under Section 8547.10.  Second, Defendants allege

13 Plaintiff failed to exhaust mandatory administrative remedies.

14 Defendants' second argument is dispositive, therefore it is

15 unnecessary for the Court to address their first argument.

16       Defendants base their mandatory exhaustion of remedies

17 argument on Section 8547.10(c).  Sub-section (c), in part,

18 states:

19             ... any action for damages shall not be
            available to the injured party unless the
            injured party has first filed a complaint
20          with the university officer identified
            pursuant to subdivision (a), and the
21          university has failed to reach a decision
            regarding that complaint within the time
22          limits established for that purpose by the
            regents.

23

24 ///

25 ///

26 ///

27 ///

28 ///

1 In Campbell v. The Regents of Univ. of Cal., the California

2 Supreme Court interpreted Section 8547.10(c), concluding:

3           [T]he statute permits aggrieved university
          employees to file a damages action ... the
4           employee may not proceed with a court action
          against the university unless that institution
5           has failed to reach an administrative decision
          on the action within a specified time limit ...
6           If ... the university has reached a decision on the
          administrative action, the statute does not authorize
7           any statutory damages action.  35 Cal. 4th 311, 327
          (2005).

8

9      Therefore, for Plaintiff to now assert a viable claim under

10 Section 8547.10, she must have first exhausted all internal

11 University remedies, or attempted to exhaust all internal

12 University remedies, and the University must have failed to

13 provide a timely result.  Because the Court has already concluded

14 that Plaintiff failed to exhaust available administrative

15 remedies, Defendants' Motion to Dismiss Plaintiff's Fourth Claim

16 for Relief must therefore be GRANTED.

17

18 **11.  Motion to Dismiss Plaintiff's California Labor Code § 1102.5**
**Claim**

19

20      Individual Defendants in their individual capacities move to

21 dismiss Plaintiff's Fifth Claim for Relief, which alleges a

22 violation of California Labor Code § 1102.5 ("Section 1102.5").

23 Section 1102.5 encourages workplace whistle-blowing complaints,

24 by prohibiting employer retaliation against an employee who

25 reports a reasonably suspected violation of the law to a

26 government or law enforcement agency.  Collier v. Super. Ct. 228

27 Cal.App.3d 1117 (1991).

28 ///

34

Defendants contend Section 1102.5 does not apply to University employees, because Government Code Section 8547.10 is a more specific statute prohibiting the same conduct and therefore is controlling.  Defendants' argument is misplaced.

In enacting California Labor Code § 1106 ("Section 1106"), the Legislature clearly recognized that University of California employees are protected by Section 1102.5.  Specifically, Section 1106 states:

> For the purposes of Sections 1102.5 ... "employee" includes, but is not limited to, any individual employed by the state or any subdivision thereof, ... or the University of California.

Furthermore, the California Supreme Court, in <u>Campbell</u>, stated: "[f]or the purposes of Labor Code Sections 1102.5 – 1105, Labor Code Section 1106 defines "employee" as including employees of the University of California." 35 Cal.4th 640, 663 (1998).

Based on the explicit language of both Section 1106 and <u>Campbell</u>, Defendants' Motion to Dismiss Plaintiff's Fifth Claim for Relief is DENIED.


**12.  Motion to Dismiss Plaintiff's California Government Code §
     12900 Claim**

Individual Defendants in their individual capacities assert that all individuals are immune from liability under California Government Code § 12900, also known as the Fair Employment and Housing Act ("FEHA"), thereby mandating dismissal of Plaintiff's Ninth Claim for Relief against them.  Generally, FEHA provides a private right of action for employees that suffer discrimination or retaliation at the workplace.

1   Defendants' argument against individual liability is premised on

2   the California Supreme Court's decision in <u>Reno v. Baird</u>, 18

3   Cal.4th 640 (1998).

4        In <u>Reno</u>, the court held that "individuals who do not

5   themselves qualify as employers may not be sued under the FEHA

6   for alleged discriminatory acts." <u>Id</u>. at 663.  The <u>Reno</u> opinion

7   nonetheless placed great emphasis on the differences between

8   discrimination and harassment, in both definition and application

9   under the FEHA.[17]  <u>Reno's</u> elaborate discussion of these

10  distinctions have led Federal and California courts to interpret

11  the rule against individual liability under FEHA as limited to

12  claims of discrimination.  See <u>Winarto v. Toshiba</u>, 274 F.3d 1276

13  (9th Cir 2001); <u>Walrath v. Sprinkel</u>, 99 Cal.App.4th 1237 (2002);

14  <u>Henson v. Lassen</u>, 2006 U.S. Dist LEXIS 50386 (N.D. Cal. 2006).

15  Consequently, individual liability remains a viable cause of

16  action under FEHA for harassment.  Plaintiff adequately pled

17  claims of harassment in the FAC, such as Mr. Genito's alleged

18  discussion and investigation of Plaintiff's personal life

19  regarding alleged sex parties and activities conducted in the

20  nude (FAC 44:7-20).  Plaintiff's Ninth Claim for Relief against

21  individual Defendants in their individual capacities therefore

22  remains viable with respect to harassment.

23  ///

24  ///

25

26       [17] "Harassment consists of conduct outside the scope of
    necessary job performance, conduct presumably engaged in for
27  personal gratification, because of meanness or bigotry" compared
    to discrimination which "arises out of the performance of
28  necessary personnel management duties." <u>Id</u>. at 645-646.

1  Accordingly, Defendants' Motion to Dismiss Plaintiff's Ninth

2  Claim for Relief, as it pertains to individual Defendants in

3  their individual capacity, is DENIED.

4

5  **13.  Motion to Dismiss Plaintiff's Common Law Discrimination &**
       **Retaliation Claim**

6

7       A <u>Tameny</u> claim provides an action in tort for an employee

8  who has endured retaliation or been discharged against public

9  policy.  <u>Tameny v. Atl. Richfield Co.</u>, 27 Cal. 3d 167 (1980)

10 (concluding the plaintiff, who had been discharged after refusing

11 to engage in unlawful activity, had a viable tort claim for

12 wrongful discharge against public policy); see also 3 Witkin Cal.

13 Proc. Actions § 144.  In moving to dismiss Plaintiff's Tenth

14 Claim for Relief, for discrimination and retaliation in violation

15 of public policy ("Tameny claim").  Individual Defendants in

16 their individual capacity argue that liability under <u>Tameny</u>

17 applies only to employers.  In response, Plaintiff argues the

18 <u>Reno</u> decision provides for individual liability under a <u>Tameny</u>

19 claim "to the same extent [individuals] are liable under FEHA,"

20 (Pl.'s Reply 18:18), and that therefore an individual can still

21 be held liable under <u>Tameny</u>.

22      A common law cause of action for retaliation in violation of

23 public policy is properly asserted against an individual

24 supervisor.  <u>Walrath v. Sprinkel</u>, 99 Cal.App.4th 1237 (2002)

25 (holding <u>Reno v. Baird</u> does not bar plaintiff's claim against his

26 former supervisor for retaliation in violation of public policy).

27 ///

28 ///

The <u>Walrath</u> court aligned itself with the Ninth Circuit's decision in <u>Winarto v. Toshiba Am. Elec. Components</u>, 274 F.3d 1276, in finding that the <u>Reno</u> decision only applies to claims of discrimination.  Therefore individual liability for claims of retaliation remains viable against individuals, and Defendants Motion to Dismiss Plaintiff's Tenth Claim for Relief is DENIED.

**14.  Motion to Dismiss Civil Code § 51.7 Claim**

Plaintiff does not oppose Defendants Motion to Dismiss Plaintiff's Eleventh Claim for Relief, California Civil Code § 51.7.  Therefore, Defendants motion is GRANTED.

**15.  Motion to Dismiss Civil Code § 51.9 Claim**

Plaintiff does not oppose Defendants Motion to Dismiss Plaintiff's Twelfth Claim for Relief, California Civil Code § 51.9.  Therefore, Defendants motion is GRANTED.

**16.  Motion to Dismiss Common Law Fraud**

Individual Defendants in their individual capacity assert that Plaintiff's Thirteenth Claim for Relief, which alleges fraud, should be dismissed for failure to plead sufficiently specific facts.  In response, Plaintiff contends she pled "who, what, where, when, and why to the fullest extend possible" (Pl. Reply 21:6-7).

Rule 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

///

38

To satisfy "particularity," a plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.  <u>Cooper v. Picket</u>, 137 F.3d 616, 625 (9th Cir. 1997) (overturned by statute on other grounds).

The Court is unable to locate a statement, in Plaintiff's FAC, indicating why Defendants' statements were false or misleading.  Plaintiff makes several conclusory statements alleging Defendants of making false statements,[18] which fail to satisfy "particularity" under Rule 9(b).  Consequently, Defendants' Motion to Dismiss Plaintiff's Thirteenth Claim for Relief is GRANTED, with leave to amend.

## 17.  Motion for More Definite Statement of Plaintiff's Claim of Interference with Prospective Economic Advantage

Individual Defendants in their individual capacities move for a more definite statement on Plaintiff's Fifteenth Claim for Relief, which alleges interference with prospective economic advantage, arguing the FAC is impermissibly vague.  Interference with prospective economic advantage provides an action in tort against one who knowingly and intentionally interferes with a plaintiff's potential economic gain.  <u>Youst v. Longo</u>, 43 Cal.3d 64, 71 (1987).

---

[18] For example: "on or about 2003 March 21, Managing Agent Genito responded by writing and sending electronic mail fraudulently promising to meet with Plaintiff ... At no time did Managing Agent Genito intend to meet with or discuss the concerns of Plaintiff Employee" (FAC 43:14-15).

1    Plaintiff's FAC clearly alleges facts giving rise to
2  intentional interference with her employment at the University.
3  Moreover, Plaintiff identifies the specific Defendants who
4  interfered with her employment on each occurrence.  Furthermore,
5  Defendants do not claim that "the information sought . . . is not
6  available and is not ascertainable through discovery."  <u>Famolare</u>,
7  525 F. Supp. at 949.  Accordingly, the Court is unable to say
8  that the FAC is so vague and ambiguous, regarding Plaintiff's
9  Fifteenth Claim for Relief, that Defendants cannot frame a
10 responsive pleading.  Consequently, Defendants' Motion for a More
11 Definite Statement on Plaintiff's Fifteenth Claim for Relief is
12 DENIED.

13

14 **18.  Motion to Dismiss Plaintiff's Defamation Claim**

15    Defendants contend Plaintiff's Sixteenth Claim for Relief,
16 which alleges defamation, should be dismissed for failure to
17 state a viable cause of action.  Particularly, Defendants argue
18 Plaintiff failed to plead facts showing what specific Defendants
19 made a defamatory statement, when any such statements were made,
20 and to whom the statements were made.  In response, Plaintiff
21 directs the Court to paragraphs 99 and 100 of her FAC.  Paragraph
22 99 states: "Managing Agent Genito told Plaintiff Employee that he
23 had heard rumors to the effect that Plaintiff Employee: (1)[w]as
24 hosting wild, lesbian sex parties at her house . . .
25 (2)[p]erformed yard work in the nude, and (3) [f]etched her
26 newspaper topless" and "an investigation of said allegations had
27 been performed by Managing Agent Lead Supervisor Robert Bohn"
28 (FAC 44:7-12).

1    Because the Court believes these accusations maybe
2  sufficient to state a viable claim for defamation, at least for
3  the purposes of a motion to dismiss, Defendants' Motion to
4  Dismiss Plaintiff's Seventeenth Claim for Relief is DENIED.

5

6  **19.   Motion to Dismiss Plaintiff's Invasion of Privacy Claim**

7    Individual Defendants in their individual capacities contend
8  that Plaintiff has failed to plead facts showing both a
9  reasonable expectation of privacy and a serious invasion of
10 privacy.  Defendants therefore argue that Plaintiff's Seventeenth
11 Claim for Relief, which alleges invasion of privacy, should be
12 dismissed.  Plaintiff rebuts Defendant's argument by pointing out
13 various allegations that support an invasion of privacy.
14 Specifically, the Plaintiff directs the Court to investigation by
15 Managing Agent Lead Supervisor Robert Bohn that Plaintiff
16 allegedly: (1) "host[ed] wild, lesbian sex parties at [her] house
17 with [Managing Agent Genito]," (2) "performed yard work in the
18 nude," (3)"Fetched [her] newspaper topless" (FAC 44:8-10).

19    Because the Court believes these accusations maybe
20 sufficient to state a viable claim for invasion of privacy, at
21 least for the purposes of a Rule 12(b)(6) motion, Defendants
22 Motion to Dismiss Plaintiff's Seventeenth Claim for Relief is
23 DENIED.
24 ///
25 ///
26 ///
27 ///
28 ///

**20.  Motion to Dismiss Plaintiff's Claim for Intentional
      Infliction of Emotional Distress**

Individual Defendants in their individual capacities argue
that Plaintiff's Eighteenth Claim for Relief, which alleges
intentional infliction of emotional distress ("I.I.E.D."), should
be dismissed for failure to plead facts that rise to the level to
state a viable claim.  Particularly, Defendants contend Plaintiff
failed to plead facts showing "'outrageous conduct' that is 'so
extreme as to exceed all bounds of that are usually tolerated'"
(Defs.' Mot. 20:22).  In response, Plaintiff points out the
alleged conduct of Mr. Genito in taking and destroying
Plaintiff's family portrait.

In the Second Restatement of Torts, liability for I.I.E.D.
is generally found when "the conduct has been so outrageous in
character, and so extreme in degree, as to go beyond all possible
bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community."  Restat. 2d of Torts § 46;
see also Su v. M/V S. Aster, 978 F.2d 462, 473 (9th Cir. 1992).
The Ninth Circuit has established five factors to determine if
the above standard has been satisfied:

> (1) the position occupied by the defendants;
> (2) whether plaintiffs were particularly
> susceptible to emotional distress, and
> if defendant knew this fact;
> (3) whether defendants' conduct may have
> been privileged under the circumstances;
> (4) whether the degree of emotional
> distress caused by a party was severe as
> opposed to mere annoyance, inconvenience, or
> normal embarrassment; and
> (5) whether the actor was aware that there
> was a high probability that his or her
> conduct would cause severe emotional
> distress and proceeded in a conscious
> disregard of it. Id.

1    Although Mr. Genito's conduct of destroying Plaintiff's

2 family portrait, if true, could be considered "outrageous," it is

3 nonetheless irrelevant to Plaintiff's current claim of I.I.E.D.

4 because it took place prior to January 14, 2003, when she filed

5 her first lawsuit in Yolo County.  Nonetheless, the Court finds

6 Plaintiff's accusation that Mr. Genito coerced subordinate

7 employees to file workplace grievances against Plaintiff and then

8 backdate said complaints outrageous conduct, at least for the

9 purposes of a motion to dismiss.  Mr. Genito was in a position of

10 seniority.  If true, Mr. Genito's conduct was intentional and

11 committed with the knowledge that Plaintiff would suffer

12 workplace repercussions.  Accordingly, the Court finds Plaintiff

13 has adequately plead facts sufficient to state a viable claim of

14 I.I.E.D.  Therefore, Defendants Motion to Dismiss Plaintiff's

15 Eighteenth Claim of Relief is DENIED.

16

17 **21.   Motion to Dismiss Plaintiff's California Business &**
      **Professions Code § 17200, *et seq*, Claim**
18

19    In moving to dismiss Plaintiff's Nineteenth Claim for

20 Relief, for violation of California Business and Professional

21 Code § 17200, *et seq* ("Section 17200"), individual Defendants

22 contend that Plaintiff failed to plead facts to support a claim

23 against them in their individual capacities.  Under Section

24 17200, a person engaging in "any unlawful, unfair or fraudulent

25 business act or practice and unfair deceptive, untrue or

26 misleading advertising" is liable for damages.  Cal. Bus. & Prof.

27 Code §§ 17200, 17203.

28 ///

43

1    Throughout the FAC, Plaintiff pleads facts accusing
2  individual Defendants of carrying out unfair and unlawful
3  business acts against her.  The Court acknowledges that the FAC
4  lacks explicit details of how individual Defendants, in their
5  individual capacities, participated in unfair and unlawful
6  business practices against Plaintiff.  However, under the liberal
7  pleading rules, the Court finds that the Plaintiff has
8  sufficiently pleaded facts, at least for the purpose of a motion
9  to dismiss, to state a viable Section 17200 claim against
10 individual Defendants in their individual capacity.
11 Consequently, individual Defendants Motion to Dismiss Plaintiff's
12 Nineteenth Claim for Relief is DENIED.

13

14 **22.   Motion to Dismiss Plaintiff's Breach of Contract Claim and**
        **Breach of the Covenant of Good Faith and Fair Dealing Claim**
15

16    Individual Defendants in their individual capacities move to
17 dismiss Plaintiff's Twenty-First and Twenty-Second Claims for
18 Relief, which allege breach of contract and breach of the
19 covenant of good faith and fair dealing,[19] Defendants assert two
20 grounds for dismissal of both claims for relief.

21 ///

22 ///

23 _____

24 " ... the duty of good faith and fair dealing derives from and
   exists solely because of the contractual relationship between the
25 parties.  Thus, a defendant cannot be held liable for breach of
   the duty of good faith and fair dealing if it was not party to
26 the underlying contract."  Wady v. Provident Life & Accident Ins.
   Co. Of Am., 216 F.Supp.2d 1060, 1065 (C.D. Cal. 2002); see also
27 Austero v. National Cas. Co., 62 Cal.App.3d 511, 515 (1976).

28

44

First, individual Defendants assert that Plaintiff's employment was held by statute, thereby prohibiting a breach of contract claim premised on her employment with the University, or a claim for breach of the covenant stemming therefrom. Plaintiff does not dispute Defendants position insofar as it pertains to her employment. However, Plaintiff contends that both her Twenty-First and Twenty-Second Claims for Relief are based on alternative contractual relationships between Plaintiff and Defendants. Specifically, Plaintiff asserts that her breach of contract and breach of covenant of good faith and fair dealing claims are predicated on: (1) the 1991 settlement agreement, (2) the 1994 oral agreement between Plaintiff, Ms. Ramiro, and Mr. Shimek, and (3) the February 8, 2002 verbal agreement between Plaintiff, Mr. Shimek, and Ms. Randall. Defendants failed to address the validity of Plaintiff's three alternative contracts. Accordingly, the Court finds that Plaintiff's breach of contract and breach of covenant of good faith and fair dealing claims, based on the three above contracts, are adequately pled.

Next, individual Defendants assert that Plaintiff has failed to plead sufficient facts showing that the individual Defendant in their individual capacities entered into the contracts in question. Plaintiff rebuts Defendants' argument by contending she has properly pled that individual Defendants were parties to the contracts in question.

Although Plaintiff has not pled specific facts showing that individual Defendants, in their individual capacity, entered into a contract with Plaintiff, she did plead facts showing their involvement in the creation of said contracts.

45

At the current stage of litigation, the status of individual Defendants in either their official or individual capacity is undetermined with respect to the formation of the contracts in question. Consequently, under the rule of liberal pleading, the Court finds Plaintiff has pled sufficient facts, for the purpose of a motion to dismiss, to assert viable claims for breach of contract and breach of good faith and fair dealing against individual Defendants in their individual capacity.

Accordingly, Defendant's Motion to Dismiss Plaintiff's Twenty-First and Twenty-Second Claims for Relief is DENIED

### 23. Motion to Strike Punitive Damages

Plaintiff does not oppose Defendants' Motion to Strike Punitive Damages.  Therefore, punitive damages against all Defendants are stricken.

## CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss, under Rule 12(b)(6), is granted in part and denied in part as follows. All of Plaintiff's claims based on facts prior to January 14, 2003 are dismissed based on the doctrine of res judicata. Additionally, Plaintiff's state statutory and common law claims against Defendant Regents and individual Defendants in their official capacities are dismissed based on the doctrine of exhaustion of administrative remedies.

Plaintiff's 42 U.C.S. §§ 1983 and 1985 claims against Defendant Regents and individual Defendants in their official capacities are dismissed.

1  Plaintiff's FEHA claims against individual Defendants are also

2  dismissed.  Plaintiff's state claims, premised on violation of

3  California Government Code § 8547.10, and California Civil Code

4  §§ 51.7, 51.9, against individual Defendants in their individual

5  capacities are dismissed.  Additionally, Plaintiff's fraud claim

6  against individual Defendants in their individual capacities is

7  dismissed, with leave to amend.  In all other respects, however,

8  Defendants' Motion to Dismiss is denied.

9       Finally, because Defendants have not demonstrated their

10 entitlement to a more definite statement of Plaintiff's 42 U.S.C.

11 § 1983 or Interference with Prospective Economic Advantage claims

12 under Rule 12(e), Defendants Motion For a More Definite Statement

13 is also denied.

14      IT IS SO ORDERED.

15 DATED: December 18, 2006

16

17

18 _____

19 MORRISON C. ENGLAND, JR
   UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

47