1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11   EDITH F. CARTWRIGHT,                No. 2:05-cv-02439-MCE-KJM

12          Plaintiff,

13      v.                               MEMORANDUM AND ORDER

14   REGENTS OF THE UNIVERSITY OF
     CALIFORNIA, an entity of the
15   state of California;
     UNIVERSITY OF CALIFORNIA; an
16   entity of the state of
     California, DENNIS SHIMEK, an
17   individual, in his
     representative and individual
18   capacities; ALAN TOLLEFSON, an
     individual in his
19   representative and individual
     capacities; SAL GENITO III, an
20   individual, in his
     representative and individual
21   capacities; and DOES 2-300,

22          Defendant.

23                    ----oo0oo----

24

25   ///

26   ///

27   ///

28   ///

                              1

In this action, Plaintiff Edith F. Cartwright ("Plaintiff") seeks damages, including special, general, nominal, and punitive damages, from Defendant Regents of The University of California ("Regents"), Defendant University of California,[1] and Defendants Dennis Shimek, Alan Tollefon, Sal Genito III, in both their official and individual capacities.

In her Third Amended Complaint ("TAC"), Plaintiff contends she was subject to discrimination and retaliation by Defendants over a thirteen year period.  She claims this wrongful conduct ultimately resulted in her termination.  Plaintiff alleges violations of 42 U.S.C. § 1983, 42 U.S.C. § 1985, 20 U.S.C. § 1681(a), 42 U.S.C. § 1981, and 42 U.S.C. § 2000e.  In addition, Plaintiff asserts California statutory claims pursuant to Business and Professions Code § 17200, Civil Code §§ 52.1, 1714, and Labor Code § 1102.5, along with numerous other state common law claims.

Defendants now move to dismiss many of Plaintiff's claims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  In addition, Defendants move to strike Plaintiff's prayer for punitive damages (TAC 68:23-64:10) pursuant to Rule 12(f).

///

///

///

[1] "Regents" collectively refers to the University of California and the Regents of The University of California, unless otherwise noted.

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

For the reasons set forth below, Defendants' Motion to Dismiss and Motion to Strike are granted in part and denied in part.[3]

## BACKGROUND[4]

Plaintiff, a Latina, Mexican-American, Native-American homosexual female, began working for the University of California, Davis, in August 1987, as an employee in the Physical Plant-Facilities-Operational Department.  Despite her repeated complaints to various authorities, Plaintiff claims she was subjected to a litany of discriminatory and retaliatory acts based on her race, gender, and sexual preference during her sixteen-year tenure of employment with the University.

Shortly after being hired, Plaintiff alleges that two of her male superiors began subjecting her to discrimination and harassment.  The discrimination and harassment was ongoing and ultimately prompted Plaintiff, in 1991, to file complaints with the University, the Department of Fair Employment and Housing, and the Yolo County Superior Court.  The University entered into a written settlement agreement with Plaintiff under which Plaintiff agreed to release her claims in return for $30,000 and a promise by the University not to retaliate.

///

---

[3] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

[4] The Court relies extensively on Plaintiff's TAC in reciting the alleged facts of this case.

1    Three years later, in 1994, Plaintiff brought a new
2  discrimination and retaliation suit in Yolo County Superior Court
3  after she was allegedly passed over for a promotion in favor of a
4  less qualified candidate.  Plaintiff dismissed that suit after
5  being convinced to do so by a superior, Managing Service Officer
6  Andrea Ramiro.[5]  The dismissal was intended as a good faith
7  gesture in anticipation of a meeting Ms. Ramiro had scheduled for
8  Plaintiff with the University's Associate Vice Chancellor of
9  Human Resources, Dennis Shimek.  The meeting was presented to
10 Plaintiff as an opportunity to voice her concerns.  Plaintiff met
11 with Mr. Shimek, aired her grievances, and made several requests
12 related to working conditions and pay.  The University took the
13 requests under consideration, but two weeks later informed
14 Plaintiff that the requests were denied.

15    In 1995, Plaintiff interviewed with and was selected by an
16 independent hiring committee for Manager of Product Control
17 Development Team.  Although Plaintiff claims she was unanimously
18 selected by the hiring committee, she alleges that a less
19 qualified white male was offered the position.  That same year,
20 Plaintiff interviewed with and was selected by a different hiring
21 committee for the position of Customer Service Manager.  After
22 five interviews with Managing Agent Ralls, Plaintiff was
23 eventually offered the position.  In the third interview,
24 Mr. Ralls purportedly told Plaintiff that because the committee
25 had chosen her, the best person for the job could not be hired.

26

27    [5] Plaintiff claims that Ms. Ramiro told her that "[l]ife at
28 the university will be much easier for you if you dismiss your
   complaint" (TAC 46:5).

4

Mr. Ralls also told Plaintiff the candidate from New York was not selected because she was white.

Three years later, Plaintiff borrowed a plumbing tool for a weekend, as she claims was commonly done by University employees. One month after Plaintiff returned the tool, Mr. Ralls initiated an investigation into the incident. According to Plaintiff, said investigation lasted three months, involved 300 interviews, and ultimately led to Plaintiff being suspended without pay for one week.

While on medical leave in September 2001, Managing Agent Genito gave Plaintiff's position and office to a junior employee, while failing to provide her with a new job title or description. Mr. Genito packed up Plaintiff's belongings and moved them to her new office, a greasy, windowless storage room in the back of the machine shop.

In December 2001, Plaintiff was in charge of implementing the "Fast Track Program," a program designed to ensure that minor repairs throughout the University campus were effectuated quickly. According to Plaintiff, Defendants were intent on embarrassing Plaintiff and causing the program to fail from the beginning. Mr. Genito told craftspeople "to design problems and ask Plaintiff ... how to solve them ... a competition to see who could 'stump'" Plaintiff (TAC 36:9-11). Managing Agent Tollefson described the "Fast Track Program" as a "bunch of fucking rejects," the "the bad news bears," and "F Troop" (TAC 36:18-19.

Motivated by this continued mistreatment, Plaintiff filed a verbal complaint against Mr. Genito with Managing Agent Human Resources Supervisor Marion Randall on February 3, 2002.

Three days later, Ms. Randall informed Plaintiff her complaint had been forwarded to the University's Associate Vice Chancellor of Human Resources, Dennis Shimek.  Mr. Shimek met with Plaintiff to discuss her complaint.  As a remedy, the University transferred Plaintiff to another department against her wishes.  Plaintiff alleges that her move in that regard was contingent on receiving pay equal to that received by Managing Agent Tollefson, obtaining leave time for continuing education, and on the understanding that her reassignment was temporary.  Seventy-two hours after Plaintiff switched departments, Plaintiff claims Ms. Randall told her the University would no longer adhere to these commitments.

Defendants' unwillingness to abide by the terms of their agreement prompted Plaintiff to file a complaint of discrimination and retaliation with the Equal Employment Opportunity Commission, Department of Fair Employment and Housing, and Defendant Regents' Department of Human Resources.  Immediately thereafter, Managing Agent Manager of Human Resources Michael Garcia contacted Plaintiff to arrange a meeting.  At the meeting, Plaintiff stated she wanted to be reinstated in her old job.  Unwilling to provide an answer at the time, Mr. Garcia informed Plaintiff four weeks later she would not be able to return to her old job.

In February 2003, Mr. Genito instructed Plaintiff to authorize and accept delivery of a new recycling dump-truck.  After research, Plaintiff discovered the dump-truck had serious safety hazards and was less efficient and more expensive then the current truck.

Plaintiff raised her concerns with Mr. Genito, who in response cancelled a pre-arranged meeting and failed either to follow-up or reschedule.  One month after first contacting Mr. Genito, Plaintiff sent a comprehensive written report regarding her concerns of the new dump-truck to Mr. Genito and several other Managing Agents.  The following day, April 25, 2003, Plaintiff claims she was placed on investigatory leave.

Before placing Plaintiff on investigatory leave, in March 2003, Mr. Genito allegedly informed Plaintiff that she was being investigated due to "rumors" of the following behavior: (1) "hosting wild, lesbian sex parties at [her] house with [Managing Agent Genito]", (2) "perform[ing] yard work in the nude," and (3) "fetch[ing] [her] newspaper topless" (TAC 10:19-24).  Said investigation consisted of Managing Agent Lead Supervisor Robert Bohn interviewing the Turf Crew[6] about such rumors.

In addition, Plaintiff alleges that on April 25, 2003, Mr. Genito forced three subordinate employees to file workplace grievances against Plaintiff, which were then backdated to April 16, 2003.  The three grievances triggered an investigation, starting in July 2003, by Managing Agent June Taylor.

///

///

///

///

---

[6] The Turf Crew was composed of Lead Groundsperson Roger Adamson, Equipment Operator Ted Adams, Equipment Operator Kevin Galart, and Laborer Gary Simmons (TAC 11:4-6).

During the course of that investigation, none of Plaintiff's witnesses were interviewed and the three complainants were interviewed in the presence of Mr. Genito.  The investigation led to Plaintiff receiving a "Notice of Intent to Dismiss," which accused Plaintiff of being disrespectful, disruptive, threatening, and unprofessional while interacting with several different subordinates and co-workers.  On November 10, 2003, Plaintiff was fired.

While Plaintiff was on investigatory leave, Mr. Genito allegedly entered Plaintiff's office without her consent.  According to Plaintiff, he took or destroyed several of her personal items, including her framed pictures and an antique stereo, crystal pitcher and crystal glass.

Following her dismissal, Plaintiff filed numerous complaints with Defendant Regents' "Whistler-blower Hotline."

## STANDARD

### 1.   Motion to Dismiss Under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

1  Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80

2  (1957).  While a complaint attacked by a Rule 12(b)(6) motion to

3  dismiss does not need detailed factual allegations, a plaintiff's

4  obligation to provide the "grounds" of his "entitlement to

5  relief" requires more than labels and conclusions, and a

6  formulaic recitation of the elements of a cause of action will

7  not do.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-56, 127

8  S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations and

9  quotations omitted).  Factual allegations must be enough to raise

10 a right to relief above the speculative level.  Id. at 555

11 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure

12 § 1216, pp. 235-236 (3d ed. 2004) ("The pleading must contain

13 something more . . . than . . . a statement of facts that merely

14 creates a suspicion [of] a legally cognizable right of action").

15      If the court grants a motion to dismiss a complaint, it must

16 then decide whether to grant leave to amend.  The court should

17 "freely give[]" leave to amend when there is no "undue delay, bad

18 faith[,] dilatory motive on the part of the movant, . . . undue

19 prejudice to the opposing party by virtue of . . . the amendment,

20 [or] futility of the amendment. . . ."  Fed. R. Civ. P. 15(a);

21 Foman v. Davis, 371 U.S. 178, 182 (1962).  Generally, leave to

22 amend is only denied when it is clear that the deficiencies of

23 the complaint cannot be cured by amendment.  DeSoto v. Yellow

24 Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

25 ///

26 ///

27 ///

28 ///

9

### 2.   Motion to Strike Under Rule 12(b)(6)

The Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "(T)he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)(rev'd on other grounds Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994))(internal citations and quotations omitted).  Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question.  Id.

**ANALYSIS**

### 1.   Claims Against Individual Defendants Shimek and Tollefson

Defendants argue that Plaintiff has failed to support her claims against Defendants Shimek and Tollefson with any factual allegations that are not barred by the doctrine of res judicata. Defendants cite this Court's December 18, 2006 Order, which invokes res judicata to bar Plaintiff from basing any of her claims on allegations that arise from conduct that occurred prior to January 14, 2003.  Plaintiff responds that her claims are based on her allegedly wrongful termination on November 10, 2003.

10

She contends that her pre-January 14, 2003, factual allegations
are relevant as background evidence but are not the sole basis
for any of her claims against Defendant Shimek or Tollefson.

The Court agrees with Defendants and finds that Plaintiff
has failed to plead facts that amount to a viable cause of action
against Defendant Shimek or Tollefson.  Under this Court's
December 18, 2006 Order, she is estopped by the doctrine of
res judicata from basing a claim on alleged conduct that occurred
prior to January 14, 2003.  Nevertheless, nowhere in her TAC does
she assert a single post-January 14, 2003, factual allegation
against Defendant Shimek or Tollefson.  Her argument that her
claims actually derive from her allegedly wrongful termination on
November 10, 2003, is unavailing because she has not made a
single factual allegation that could even suggest to the Court
that Defendant Shimek or Tollefson bears any legal responsibility
for her termination.  Since in order to survive a motion to
dismiss "[f]actual allegations must raise a right to relief above
the speculative level," Twombly, 550 U.S. at 555, this Court
cannot accept Plaintiff's bare assertion in her Opposition to
Defendants' Motion to Dismiss that Defendants Shimek and
Tollefson are somehow liable for Plaintiff's termination.[7]
///

---

[7] Given Plaintiff's failure to state a viable claim against
Defendant Shimek or Tollefson, her arguments that Shimek's and
Tollefson's pre-January 14, 2003, conduct evinces a
discriminatory course of conduct and hostile work environment are
entirely beside the point.  It is unnecessary to decide whether
pre-January 14, 2003, conduct could be used as "background
evidence" for valid claims, because Plaintiff has failed to meet
her threshold burden of stating a claim based on properly pleaded
factual allegations derived from post-January 14, 2003, conduct.

11

1    In addition, the Court finds that granting leave to amend
2    would be inappropriate with respect to Plaintiff's claims against
3    Defendants Shimek and Tollefson.  A district court may "den[y]
4    leave to amend where the amendment would be futile."  DeSoto,
5    957 F.2d at 658.  In its December 18, 2005 Order, this Court made
6    clear that res judicata is inapplicable "inasmuch as Plaintiff may
7    properly state claims for relief derived from accusations occurring
8    after January 14, 2003." (14:12-14).  Nevertheless, Plaintiff did
9    not take this opportunity to amend her claims against Defendants
10   Shimek and Tollefson to comply with this Court's Order.  Instead,
11   she submitted her TAC without any new post-January 14, 2003,
12   allegations against Defendant Shimek or Tollefson.

13   Moreover, Plaintiff's own arguments in response to
14   Defendants' motion to dismiss demonstrate that granting her leave
15   to amend her complaint against Defendants Shimek and Tollefson
16   would be futile.  In response to Defendants' contention that her
17   claims against Defendants Shimek and Tollefson were estopped by
18   res judicata, the best rejoinder she could muster was the naked
19   assertion that her claims were actually based on her November 10,
20   2003, termination.  The only other argument that Plaintiff tries
21   to make for the post-January 14, 2003, liability of Defendant
22   Shimek or Tollefson is equally meritless.  With regard to her
23   allegation that Defendant Genito entered her office without
24   authorization on November 7, 2003, and took and destroyed her
25   personal property, Plaintiff argues that Defendant Shimek
26   "clearly would have had knowledge/given approval to Defendant
27   Genito's actions" because of his position as a top-level Human
28   Resources administrator.

12

Even assuming, *arguendo*, that Plaintiff had alleged these contentions in her complaint, they would still fail to survive a motion to dismiss under <u>Twombly</u>.  This is precisely the sort of unsubstantiated conjecture that the <u>Twombly</u> Court refused to permit.  <u>See</u> 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

For the foregoing reasons, Defendants' motion to dismiss all claims against Defendants Shimek and Tollefson will be granted without leave to amend.[8]

## 2.   Exhaustion of Administrative Remedies

Defendant moves to dismiss all state statutory and common law claims against Defendant Genito in his individual capacity on the ground that Plaintiff has failed to exhaust her administrative remedies.  Defendant relies heavily on the broad language of two California decisions: <u>Westlake Community Hospital v. Superior Court of Los Angeles County</u>, 17 Cal. 3d 465, 469 (1976) (a plaintiff "must exhaust all available internal remedies before instituting any judicial action"), and <u>Palmer v. Regents of the University of California</u>, 107 Cal. App. 4th 899, 904 (2003)

///

///

///

[8] Because Defendants Shimek and Tollefson are hereby dismissed as defendants in this action, Defendants' further arguments to dismiss claims against all individual Defendants will only be addressed with respect to the only remaining individual defendant, Defendant Genito.

13

("When a private association or public entity establishes an internal grievance mechanism, as the Regents has done, failure to exhaust those internal remedies precludes any subsequent private civil action").  Plaintiff counters that Defendants' cited authorities prove too much, and that no existing legal authority requires a plaintiff to exhaust administrative remedies before pursuing claims against an individual in his individual capacity.

Not surprisingly, neither party cites authority that directly addresses the question before this Court.  It simply makes no sense to contend that Plaintiff should have exhausted her administrative remedies against an individual defendant in his *individual* capacity because Plaintiff did not have any administrative remedies to pursue in the first place.  It would seem axiomatic that Defendant University of California's internal grievance procedures exist only to redress official misconduct. An individual is not precluded from suing another individual for his *private* torts simply by virtue of the tortfeasor's employment with a public entity that has created an administrative mechanism for the resolution of *employment* complaints.  Thus, while Defendants do cite cases that describe California's broadly applicable administrative exhaustion rule, the rule has no relevance to an individual sued in his individual capacity because the exhaustion rule presupposes that the plaintiff has available administrative remedies to pursue.

///

///

///

///

Accordingly, to the extent that Plaintiff has alleged state statutory and common law violations against Defendant Genito in his individual capacity, the exhaustion rule is inapplicable and Defendants' motion to dismiss on that basis will be denied.[9]

### 3.   Motion to Dismiss 42 U.S.C. § 1983 Claim

Defendants initially argued that Title VI and Title IX preempt a § 1983 suit against individual Defendants in their individual capacity.  Citing a federal circuit split, Plaintiff responded that because the law is unsettled this Court should not rule, as a matter of law, that her § 1983 claims are preempted. After the parties filed their initial briefs, the Supreme Court decided Fitzgerald v. Barnstable Sch. Comm., 129 S. Ct. 788 (2009), in which the Court held that Title IX does not preempt § 1983 claims against individuals where the underlying violation is of the Equal Protection Clause of the Fourteenth Amendment. In light of the recent Fitzgerald decision, Defendants urge this Court to allow only those § 1983 claims that are based on the Equal Protection Clause.

///

///

---

[9] Defendants argue in their reply brief that Plaintiff has only alleged conduct that the individual Defendants took in their official capacities.  This Court already rejected this argument in its December 18, 2006 Order. (10:3-22).  Moreover, the Court notes that some of Plaintiff's allegations clearly seem to implicate personal liability.  For instance, Plaintiff alleges that Defendant Genito entered Plaintiff's office without authorization, and (presumably outside the scope of his employment) took and destroyed Plaintiff's personal property (TAC 17:26-18:11).

1    Defendants' reading of <u>Fitzgerald</u> is incorrect.  Plaintiff

2  may bring § 1983 claims based on both constitutional and

3  statutory violations.  While the <u>Fitzgerald</u> Court did focus its

4  analysis on whether Title IX preempts a plaintiff from bringing

5  § 1983 *constitutional* claims, it did not hold that a plaintiff

6  may not bring § 1983 claims based on violations of Title IX

7  itself.  To the contrary, the Court reversed the First Circuit's

8  "dismissal of the § 1983 claims."  <u>Id</u>. at 798.  Since the First

9  Circuit dismissed the plaintiff's § 1983 claims based on

10 violations of the Equal Protection Clause *and* Title IX itself,

11 <u>Id</u>. at 793, the clear import of the Supreme Court's order is that

12 plaintiffs may use § 1983 as a vehicle for litigating both

13 constitutional and statutory claims.  Moreover, the Court

14 explained that because "[a]t the time of Title IX's enactment in

15 1972, Title VI was routinely interpreted to allow for parallel

16 and concurrent § 1983 claims ... it follows that Congress

17 intended Title IX to be interpreted similarly to allow for

18 parallel and concurrent § 1983 claims."  <u>Id</u>. at 797.

19 Consequently, Defendants' Motion to Dismiss Plaintiff's First

20 Cause of Action, insofar as it includes non-constitutional § 1983

21 claims, will be denied.

22

23    **4.   Motion to Dismiss Labor Code § 1102.5 Claim**

24

25    Defendants argue that Plaintiff may not bring a claim under

26 Labor Code § 1102.5 because she has not exhausted her

27 administrative remedies by filing a complaint with the Labor

28 Commissioner.

16

1    Plaintiff responds that Labor Code § 1102.5 merely *allows* an
2    injured party to bring a complaint before the Commissioner.
3    Plaintiff also cites a recent California appellate decision that
4    observes that there are many exceptions to the administrative
5    exhaustion requirement, and contends that she falls within at
6    least one of them.

7    In Campbell v. Regents of Univ. of Cal., 35 Cal. 4th 311,
8    333-34, the California Supreme Court held that a plaintiff must
9    exhaust administrative remedies with the Labor Commissioner
10   before bringing a lawsuit.  Furthermore, Plaintiff is incorrect
11   in her argument that she falls within a legally recognized
12   exception to the administrative exhaustion rule.  Plaintiff
13   attempts to ground this argument in Mokler v. County of Orange,
14   157 Cal. App. 4th 121 (2007).  She points this Court to the
15   following passage, in which the Mokler Court, citing Green v.
16   City of Oceanside, 194 Cal. App. 3d 212 (1987)(citations
17   omitted), wrote:

18       Green observed that exhaustion was not an "inflexible
         dogma," but was subject to numerous exceptions,
19       "including situations where the agency indulges in
         unreasonable delay, when the subject matter lies
20       outside the administrative agency's jurisdiction, when
         pursuit of an administrative remedy would result in
21       irreparable harm, when the agency is incapable of
         granting an adequate remedy, and when resort to the
22       administrative process would be futile because it is
         clear what the agency's decision would be."
23

24   ///
25   ///
26   ///
27   ///
28   ///

1   Contrary to Plaintiff's contention, however, she does not

2   fall within the exceptions recognized by <u>Mokler</u>.   Because

3   Plaintiff does not allege that she even so much as attempted to

4   file a complaint with the Labor Commissioner, she cannot credibly

5   assert that pursuing her administrative remedies would have been

6   futile or would have somehow resulted in inadequate compensation

7   or irreparable harm.   Accordingly, Defendants' motion to dismiss

8   Plaintiff's Fourth Cause of Action will be granted.[10]

9

10   ### 5.   Motion to Dismiss Plaintiff's Common Law Discrimination and Retaliation Claim

11

12   Defendant argues that both common sense and California case

13   law preclude a plaintiff from suing an individual for the tort of

14   wrongful discharge in violation of public policy.   Plaintiff

15   counters that a footnote in the California Supreme Court's recent

16   decision in <u>Miklosy v. Regents of Univ. of Cal.</u>, 44 Cal. 4th 876

17   (2008) left open the possibility of suing an individual for

18   wrongful discharge.

19   Plaintiff's citation to footnote 8 in <u>Miklosy</u> is

20   unpersuasive.   The <u>Miklosy</u> Court *held* that an "action for

21   wrongful discharge can only be asserted against *an employer*.   An

22   individual who is not an employer cannot commit the tort of

23   wrongful discharge in violation of public policy; he or she can

24   only be the agent by which *an employer* commits that tort."

25

26   [10] Because this Court accepts Defendants' argument that
     Plaintiff failed to exhaust her administrative remedies, it is
27   unnecessary to address Defendants' further contention that Labor
     Code § 1102.5 does not provide a cause of action against an
28   individual defendant.

44 Cal. 4th at 900 (emphasis in original).  The footnote that

Plaintiff cites posits an unlikely hypothetical to show *how*

*unlikely* it would be that a plaintiff could *ever* allege a

wrongful discharge tort against an individual defendant.  Only

after observing that in general "a supervisor's action merges

with that of the employer," Id. at 901, fn. 8, did the Miklosy

Court make the statement upon which Plaintiff exclusively relies:

"We could only hold that the supervisor commits an *independent*

tort if the supervisor's action were somehow by *itself* injurious,

irrespective of the adverse employment action it causes the

employer to take, but that is not alleged here."  Id. (emphasis

in original).  Because the tort of wrongful discharge in

violation of public policy can only be asserted against an

*employer*, Defendants' motion to dismiss the Eighth Cause of

Action against Defendant Genito will be granted.

### 6.   Motion to Dismiss Plaintiff's Interference with Business Relations Claim

Defendants move to dismiss the Tenth Cause of Action against

individual Defendant Genito in his individual capacity.  They

argue that because Plaintiff's employment with the University is

statutory, rather than contractual, there can be no viable claim

for "'inducement of breach of contract' or 'interference with

economic advantage'" (Defs. Mot. 7:6).  Alternatively, Defendants

argue that as a supervisor, Defendant Genito could *only* have

acted in his official capacity.  Plaintiff objects to both

arguments.

///

19

1   She contends that her employment with the University is not

2   governed by statute because University employees are not civil

3   servants.  She also argues that a supervisor, such as Defendant

4   Genito, can act either in his official or individual capacity to

5   interfere with an economic relationship.

6        With regard to the first point of contention between the

7   parties, a California Court of Appeal has held that University of

8   California employment relationships are statutory, not

9   contractual.  Kim v. Regents of Univ. of Cal., 80 Cal. App. 4th

10  160, 165 (2000).  Nevertheless, this does not settle the issue

11  because Plaintiff's employment was not her only economic

12  relationship with the University.  As Plaintiff clearly alleges

13  in her TAC, in 1991 she entered into a settlement contract with

14  the University in which the University promised not to retaliate

15  against her.  (TAC 45:22).  Given this alleged contract,

16  Plaintiff's Tenth Cause of Action need not be based on her

17  employment relationship with the University.

18       In addition, Plaintiff is correct that an Interference with

19  Business Relations claim may be brought against a supervisor in

20  his individual capacity.  A supervisor can act either on behalf

21  of the employer or in his personal capacity.  Moreover, in its

22  December 18, 2006 Order, this Court refused to grant Defendants'

23  Rule 12(e) motion for a more definite statement regarding the

24  Interference claim against individual Defendants in their

25  individual capacities.  (40:1-12).  For these reasons,

26  Defendants' motion to dismiss the Tenth Cause of Action will be

27  denied.

28  ///

20

1   **7.   Motion to Dismiss Plaintiff's Claim for Intentional**
        **Infliction of Emotional Distress**

2

3        Defendants move to dismiss Plaintiff's intentional

4   infliction of emotional distress ("I.I.E.D.") claim as precluded

5   by the worker's compensation exclusivity rule.  Defendants also

6   argue that Defendant Genito's alleged communication to coerce

7   subordinate employees into filing workplace complaints cannot

8   support an I.I.E.D. claim because it is privileged under Civil

9   Code § 47(b).

10       In Miklosy, 44 Cal. 4th at 902, the California Supreme Court

11  held that worker's compensation is the exclusive remedy for any

12  physical or emotional injuries that occur in the normal course of

13  an employer-employee relationship.  Thus, the worker's

14  compensation exclusivity rule would bar Plaintiff from asserting

15  I.I.E.D. claims against Defendant Genito in his *official*

16  capacity.  But Plaintiff has only brought her I.I.E.D. claim

17  against Defendant Genito in his personal capacity.  Plaintiff's

18  claim, therefore, is unaffected by the exclusivity rule, for,

19  under Miklosy, worker's compensation only bars damages claims for

20  misconduct that occurs "in the normal course of the employer-

21  employee relationship." Id.  Plaintiff has properly pled

22  allegations of misconduct against Defendant Genito that did not

23  occur within the normal scope of his employment.  For instance,

24  Defendant Genito could be found personally liable for his alleged

25  destruction and conversion of Plaintiff's personal property.

26  ///

27  ///

28  ///

1   Insofar as Plaintiff has alleged conduct that gives rise to
2   an I.I.E.D. claim against Defendant Genito in his *individual*
3   capacity, Defendants' motion to dismiss the Thirteenth Cause of
4   Action will be denied.[11]

6   ### 8.   Motion to Dismiss Plaintiff's California Business and Professions Code § 17200, *et seq.* Claim

8   Defendants contend that Plaintiff has failed to state a
9   claim under California Business and Professions Code § 17200,
10  *et seq.* ("§ 17200") because Plaintiff has not alleged any unjust
11  enrichment to Defendant Genito.

12  Although Defendants are correct that restitution is the only
13  monetary remedy available under § 17200, see <u>Korea Supply Co. v.</u>
14  <u>Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1144 (2003), they
15  erroneously contend that Plaintiff must *allege* unjust enrichment
16  in order to state a valid cause of action.

17  ///

18  ///

19  ///

20  _____

21  [11] This Court also rejects Defendants' argument that Civil
    Code § 47(b) protects Defendant Genito from liability for
22  allegedly coercing subordinates into filing workplace grievances
    and backdating those complaints.  If Defendant Genito actually
23  coerced subordinates into manufacturing grievances, it is the
    unlawful nature of his alleged *conduct* that forms the basis for
    Plaintiff's I.I.E.D. claim, and not any privileged *communication*
24  that occurred in the initiation or course of an official
    proceeding within the meaning of Civil Code § 47(b).  Moreover,
25  Plaintiff's allegations that Defendant Genito backdated the
    complaints quite possibly fall within the statutory exception to
26  the privilege specified in Civil Code § 47(b)(2), which applies
    to "any communication made in furtherance of an act of
27  intentional destruction or alteration of physical evidence
    undertaken for the purpose of depriving a party to litigation the
28  use of that evidence."

1    By conflating the elements required to establish liability

2    under § 17200 with the available remedies for its violation,

3    Defendants ignore the California Supreme Court's pronouncement

4    that § 17200's "coverage is 'sweeping, embracing "anything that

5    can properly be called a business practice and that at the same

6    time is forbidden by law."'" Cal-Tech Communications, Inc. v.

7    Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 180

8    (1999)(citations omitted).  In accord with this recognition of

9    the broad scope of § 17200, this Court declared in its

10   December 18, 2006, Order that "Plaintiff has sufficiently pleaded

11   facts ... to state a viable Section 17200 claim."  (44:7-9).

12   Because Plaintiff has sufficiently alleged a viable claim

13   under § 17200, Defendants' motion to dismiss that claim will be

14   denied.  Nevertheless, this Court finds that Plaintiff may only

15   recover under her Fourteenth Cause of Action to the extent that

16   she can prove that an unfair business practice by Defendant

17   Genito resulted in his being unjustly enriched at Plaintiff's

18   expense.

19

20       **9.    Motion to Dismiss Plaintiff's Negligent Hiring,
              Retention and Supervision Claim**

21

22   Defendants argue that Defendant Genito cannot be liable for

23   negligent hiring, retention and supervision because only an

24   *employer* can be liable for personnel actions.  Defendants' cited

25   authorities, however, fail to establish such a broad immunity for

26   individual supervisors.

27   ///

28   ///

23

Fiol v. Doellstedt, 50 Cal. App. 4th 1318 (1996) is inapplicable because it involved a question of statutory construction under California's Fair Employment and Housing Act.  Though applicable to this negligence action, Sheppard v. Freeman, 67 Cal. App. 4th 339 (1998) has been rejected by a number of federal courts in California.  See, e.g., Graw v. Los Angeles County Metropolitan Transp. Authority, 52 F. Supp. 2d 1152 (C.D. Cal. 1999); Davis v. Prentiss Properties Ltd., Inc., 66 F. Supp. 2d 1112 (C.D. Cal. 1999); Scott v. Solano County Health and Social Services Dept., 459 F. Supp. 2d 959 (E.D. Cal. 2006).  This Court cannot conclude, solely on the basis of one discredited and non-binding California appellate decision, that Plaintiff is legally barred from bringing her claim against Defendant Genito for negligent hiring, retention and supervision.  Defendants' motion to dismiss the Fifteenth Cause of Action will be denied.

**10.  Motion to Dismiss Plaintiff's Breach of Contract Claim and Breach of Covenant of Good Faith and Fair Dealing Claim**

Defendants argue that Plaintiff cannot state a claim for breach of contract or breach of good faith and fair dealing against Defendant Genito because Genito was not involved in any contract with Plainitff.  Plaintiff responds by quoting from this Court's December 18, 2006 Order, which denied Defendants' motion to dismiss these claims against the individual defendants in their individual capacities.

///
///

24

1     Although Plaintiff's allegations were sufficient to defeat a

2  Rule 12(b)(6) motion to dismiss in 2006, the Supreme Court's

3  recent rulings in Twombly and Ashcroft v. Iqbal, 2009 U.S. LEXIS

4  3472 (May 18, 2009) compel this Court to reconsider its prior

5  Order.  In denying Defendants' motion to dismiss in 2006, this

6  Court relied heavily on "the rule of liberal pleading," and found

7  merely that "Plaintiff has pled sufficient facts, *for the purpose*

8  *of a motion to dismiss*."  (46:4-6)(emphasis added).  This ruling

9  was absolutely correct in 2006, given the then-valid pleading

10  standard: "A complaint should not be dismissed unless it appears

11  beyond doubt that plaintiff can prove no set of facts in support

12  of her claim which would entitle her to relief."  Lewis v.

13  Telephone Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir.

14  2006).  In Twombly, however, the Supreme Court rejected the "no

15  set of facts" rubric and stated that "[f]actual allegations must

16  be enough to raise a right to relief above the speculative

17  level."  550 U.S. at 555.  In Iqbal, the Supreme Court reaffirmed

18  Twombly's requirement that factual allegations should be at least

19  plausible, and clarified that "Twombly expounded the pleading

20  standard for 'all civil actions.'" 2009 U.S. LEXIS 3472 at 39

21  (citation omitted).  Because Plaintiff does not even mention

22  Defendant Genito as involved in any of the contracts she

23  identifies (TAC ¶¶ 163-175), she has failed to meet her pleading

24  requirement of showing that Defendant Genito could have at least

25  plausibly been liable for breach of contract or breach of good

26  faith and fair dealing.

27  ///

28  ///

1    Consequently, Defendants' motion to dismiss Plaintiff's

2   Sixteenth and Seventeenth Causes of Action, for breach of

3   contract and breach of the covenant of good faith and fair

4   dealing, respectively, will be granted.

5

6    **11.  Motion to Strike Punitive Damages**

7

8    Defendants argue that California Government Code § 818

9   exempts Defendant Regents, as a public entity, and individual

10  Defendant Genito in his official capacity, from punitive damages.

11  Plaintiff responds that the availability of punitive damages

12  under her federal §§ 1981, 1983 and 1985 claims preempt

13  California Government Code § 818 with respect to those claims.

14    It is well-settled that punitive damages are available in

15  some actions under the federal civil rights statutes.  See

16  Johnson v. Railway Exp. Agency, Inc., 421 U.S. 454, 460

17  (1980)(punitive damages available in § 1981 suits); City of

18  Newport v. Fact Concerts, Inc., 453 U.S. 247, 267-68 (1981)

19  (punitive damages allowed in § 1983 actions); Irizarry v. Quiros,

20  722 F.2d 869, 872 (1st Cir. 1983)(§ 1985 claim may support

21  punitive damages).  Furthermore, with regard to § 1983 suits, the

22  Supreme Court has determined that ordinary tort law principles of

23  punitive damages apply "with such modification or adaptation as

24  might be necessary to carry out the purpose and policy of the

25  statute."  Smith v. Wade, 461 U.S. 30, 34 (1983)(citation

26  omitted).

27  ///

28  ///

1    Accordingly, it has held "that a jury may be permitted to
2    assess punitive damages in an action under § 1983 when the
3    defendant's conduct is shown to be motivated by evil motive or
4    intent, or when it involves reckless or callous indifference to
5    the federally protected rights of others."  Id. at 56.  Moreover,
6    the Supreme Court has stated that the rule of damages, for claims
7    under the federal civil rights statutes, is a *federal* rule.
8    Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 240 (1969).
9    Consequently, where there is a conflict between the state and
10   federal rules of damages, a federal court must choose the rule
11   that better effectuates the policies embodied in the federal
12   statute.  Id.

13   One important purpose of the federal civil rights statutes
14   is "to serve as a deterrent against future constitutional
15   deprivations."  Owen v. City of Independence, 445 U.S. 622, 651
16   (1980).  Since deterrence is one of the chief objectives of
17   punitive damages, see City of Newport, 453 U.S. 247, 267 (1981),
18   they will be necessary in some cases to ensure that the
19   objectives of the civil rights statutes are fully accomplished.
20   Significantly for present purposes, federal courts of appeals
21   have concluded that, in some circumstances, state laws that do
22   not allow for punitive damages frustrate this deterrent purpose
23   and may not be applied in actions under the civil rights acts.
24   See, e.g., Bell v. City of Milwaukee, 746 F.2d 1205, 1241 (7th
25   Cir. 1984), *overruled on other grounds by* Russ v. Watts, 414 F.3d
26   783 (7th Cir. 2005); McFadden v. Sanchez 710 F.2d 907, 911
27   (2d Cir. 1983).
28   ///

27

In light of these precedents, this Court cannot rule, as a matter of law, that punitive damages are absolutely unavailable for Plaintiff's claims under §§ 1981, 1983 and 1985.[12]  Accordingly, Defendants' Motion to Strike under Rule 12(f) will be denied with respect to Plaintiff's 42 U.S.C. §§ 1981, 1983 and 1985 Claims, and granted with respect to all other causes of action.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss, pursuant to Rule 12(b)(6), is GRANTED in part and DENIED in part. All claims against individual Defendants Shimek and Tollefson are dismissed without leave to amend.  Defendants' Motion to Dismiss Plaintiff's Fourth, Eighth, Sixteenth and Seventeenth Causes of Action for violation of California Labor Code § 1102.5 and for common law discrimination and retaliation, breach of contract and breach of the covenant of good faith and fair dealing, respectively, is GRANTED.  The remainder of Defendants' Motion to Dismiss, with respect to exhaustion of administrative remedies in general and as directed to the First, Tenth, Fourteenth and Fifteenth Causes of Action in particular, is DENIED.

///

///

///

---

[12] Plaintiff does not seem to contest the motion to strike with respect to her Title VI and Tile IX claims, and wisely so, for the Supreme Court has held that punitive damages are not available under Spending Clause enactments such as Title VI and Title IX.  See Barnes v. Gorman, 536 U.S. 181 (2002).

1     Defendant's Rule 12(f) Motion to Strike Punitive Damages

2  Allegations is DENIED with respect to Plaintiff's First, Third

3  and Sixth Causes of Action for violations of 42 U.S.C. §§ 1981,

4  1983 and 1985, and GRANTED with respect to all other Causes of

5  Action.

6     IT IS SO ORDERED.

7  Dated: July 21, 2009

8

9

10     MORRISON C. ENGLAND, JR.
      UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28