UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDITH F. CARTWRIGHT, | No. 2:05-cv-02439-MCE-KJM |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, an entity of the State of California; UNIVERSITY OF CALIFORNIA, an entity of the State of California; SAL GENITO III, an individual, in his representative and individual capacities; and DOES 2-300, | |
| Defendants. | |

----oo0oo----

Defendants Regents of the University of California and Sal Genito III (collectively referred to as "Defendants" unless otherwise noted) move for summary judgment, or alternatively for summary adjudication of issues, on grounds that the instant lawsuit, brought by Plaintiff Edith Cartwright ("Plaintiff" or "Cartwright"), a former employee of the University of California, Davis, fails as a matter of law.

1

Defendants claim that 1) Plaintiff's termination resulted from her own allegedly threatening, intimidating and disuptive conduct towards her subordinates; 2) no evidence of pretext exists with which to rebut Defendants' purportedly legitimate reasons for terminating Plaintiff's employment; and 3) Plaintiff's causes of action against Defendant Genito in his individual capacity fail as a matter of law for lack of any supporting evidence.  As set forth below, Defendants' Motion will be denied.[1]

**BACKGROUND**

Plaintiff, a Latina, Mexican-American, Native-American homosexual female, began working for the University of California, Davis in August 1987, as an employee in the Physical Plant-Facilities-Operational Department.  Despite her repeated complaints to various authorities, Plaintiff claims she was subjected to a litany of discriminatory and retaliatory acts based on her race, gender, and sexual preference during her sixteen-year tenure of employment with the University.

Shortly after being hired, Plaintiff alleges that two of her male superiors began subjecting her to discrimination and harassment.  The discrimination and harassment was ongoing and ultimately prompted Plaintiff, in 1991, to file complaints with the University, the Department of Fair Employment and Housing, and the Yolo County Superior Court.

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g)

The University entered into a written settlement agreement with Plaintiff under which Plaintiff agreed to release her claims in return for $30,000.00 and a promise by the University not to retaliate.

After several alleged instances in which Plaintiff alleges that she continued to be subject to harassment, discrimination, and/or retaliation, Plaintiff began to report to Defendant Genito in approximately October of 2001.  Plaintiff claims that ongoing mistreatment (which need not be recited here given the Court's prior determination that only events occurring after January 14, 2003 are currently actionable) prompted her to file a complaint in Yolo County Superior Court on January 14, 2003.

According to Plaintiff, Defendant Genito told her, around the end of January of 2003, that the University's Vice Chancellor of Human Resources, Dennis Shimek, was "very upset" about the Yolo County litigation, given Defendants' prior 1991 agreement, as delineated above, not to retaliate against Plaintiff.  Genito admitted in his deposition that he told Plaintiff during this period of Mr. Shimek's displeasure about the complaint she had filed.  (Genito Dep., 96:12-15).

In February 2003, Mr. Genito instructed Plaintiff to authorize and accept delivery of a new recycling dump truck. After research, Plaintiff discovered the dump truck had serious safety hazards and was less efficient and more expensive then the current truck.  Plaintiff raised her concerns with Mr. Genito, who in response cancelled a pre-arranged meeting and failed either to follow-up or reschedule.

///

3

One month after first contacting Mr. Genito, on April 24, 2003, Plaintiff sent a comprehensive written report regarding her concerns of the new dump truck to Mr. Genito and several other Managing Agents. That same day, according to Plaintiff, Genito made derogatory remarks about Plaintiff in a meeting attended by senior university personnel. The following day, April 25, 2003, Plaintiff claims she was placed on investigatory leave.

Before placing Plaintiff on investigatory leave, in March 2003, Mr. Genito allegedly informed Plaintiff that she was being investigated due to "rumors" of the following behavior: 1) "hosting wild, lesbian sex parties at [her] house with [Managing Agent Genito]", 2) "perform[ing] yard work in the nude," and 3) "fetch[ing] [her] newspaper topless" (TAC 10:19-24). The investigation into these alleged "rumors" was initially conducted by Managing Agent Lead Supervisor Robert Bohn. Plaintiff alleges that because Genito was dissatisfied with the results of Bohn's investigation, he ordered Plaintiff herself to complete the investigation, despite her status as the subject of the rumors.

Plaintiff also alleges that on April 25, 2003, the day she was placed on investigatory leave, Mr. Genito forced three subordinate employees to file workplace grievances against Plaintiff, which were then backdated to April 16, 2003.

///
///
///
///
///

4

Although Defendants appear to concede that at least one of the complaints, the one by Nelson Randolph, was reduced to writing only after Plaintiff was placed on leave, Defendants nonetheless insisted that complaints from the three involved individuals were independently received, without solicitation, on an informal basis between April 15, 2003 and April 22, 2003.

The three grievances triggered an investigation, starting in July 2003, by Managing Agent June Taylor. During the course of that investigation, none of Plaintiff's witnesses were interviewed and the three complainants were interviewed in the presence of Mr. Genito. The investigation led to Plaintiff receiving a "Notice of Intent to Dismiss," which accused Plaintiff of being disrespectful, disruptive, threatening, and unprofessional while interacting with several different subordinates and co-workers.

On November 10, 2003 Plaintiff was fired. No progressive discipline was employed despite Plaintiff's sixteen-year job tenure with the University, the fact that her job performance had merited good reviews, and the fact that no formal disciplinary proceedings had been previously instituted against her. According to Defendants, termination was justified without any progressive discipline because her actions "jeopardized the safety of employees" and consequently were grounds for immediate termination. See Defs.' Proposed Undisputed Material Fact No. 18. No evidence, however, was ever submitted suggesting that Plaintiff did anything other than verbally confronting employees under her supervision.
///

1  According to Plaintiff, this conduct was commonplace among
2  Defendants' supervisors and managers, and no other such
3  individuals were subject to discipline for yelling.  See Pl.'s
4  Opp'n, 5:1-5.  Moreover, Plaintiff has produced evidence of at
5  least one other employee, Jane Lepisto, who actually physically
6  struck an employee under her supervision.  Despite the fact that
7  other witnesses allegedly observed the incident and the victim
8  had to be taken to the hospital, Ms. Lepisto was not terminated.
9       While Plaintiff was on investigatory leave, Mr. Genito
10 allegedly entered her office without her consent, and took or
11 destroyed several of her personal items, including framed
12 pictures, an antique stereo, a crystal pitcher and a crystal
13 glass.  Although most of those items were apparently returned to
14 Plaintiff about five years later, there is sharp dispute
15 concerning why Plaintiff did not obtain her personal items
16 sooner.  Defendants contend that Plaintiff did not avail herself
17 of numerous opportunities to retrieve the items, while Plaintiff
18 maintains that she was not initially permitted to enter
19 University premises to do so, and that later Defendants
20 improperly conditioned her retrieval of the items on a dismissal
21 of her conversion claim.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

7

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ....

8

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

This case, quite simply, is replete with triable issues of fact that preclude summary judgment. Moreover, despite two rounds of pleadings challenges in which Defendants scrutinized the validity of virtually every cause of action asserted by Plaintiff, Defendants once again attempt to eliminate Plaintiff's remaining claims as a matter of law. Those efforts fail.

Under these circumstances, and given the exhaustive Orders previously issued in this matter, the Court declines to again parse the various claims in exhaustive detail. Instead, since this is a case which clearly must be adjudicated through trial, some general observations alone will suffice.

///

1    First, the bulk of Defendants' Motion is predicated on the
2 argument that Plaintiff was terminated for legitimate, non-
3 discriminatory, reasons.  The reasons for Plaintiff's
4 termination, however, remain in stark dispute.  Temporally,
5 Plaintiff was placed on administrative leave within about three
6 months after University management discovered her lawsuit.
7 During the same period of time, she was asked to investigate
8 rumors pertaining to issues surrounding her own sexual identity.
9 The fact that no progressive discipline was employed is suspect,
10 since it is questionable whether any alleged verbal misconduct
11 on Plaintiff's part "jeopardized the safety of employees", as
12 Defendants allege.  Finally, the fact that another manager who
13 actually struck one of her subordinates and was not terminated
14 is also problematic.  All these factors call into question the
15 legitimacy of Plaintiff's termination, and further raises issues
16 of pretext even if one assumes that Defendants have produced, at
17 least facially, a legitimate justification for termination.
18 Temporal proximity can itself constitute circumstantial evidence
19 of pretext, even in the absence of all the other issues raised
20 by this case as enumerated above.  See Stegall v. Citadel
21 Broadcasting, Co., 350 F.3d 1061, 1069 (9th Cir. 2003).

22    Defendants' request for summary adjudication on Plaintiff's
23 claims for violations of Title VII, 42 U.S.C. § 1981 are
24 specifically predicated on the alleged legitimacy of Plaintiff's
25 termination.
26 ///
27 ///
28 ///

10

1  With regard to Plaintiff's claims under Title IX for
2  discrimination and retaliation, the same holds true- Defendants
3  cite to the "undisputed facts" as to Plaintiff's allegedly
4  disruptive and threatening behavior, along with the University's
5  subsequent investigation and review of the initial decision to
6  terminate Plaintiff.  Again, a plethora of disputed facts with
7  regard to Plaintiff's alleged behavior, the propriety of the
8  discipline she received in light of that behavior, and the
9  efficacy of the University's review (the reviewer, Ms. Allred,
10 did not even interview Plaintiff's character witnesses in spite
11 of the fact that there were no witnesses to the alleged behavior
12 of the three individuals who purportedly lodged oral complaints
13 against her).
14      Plaintiff's claims against Defendant Genito as an
15 individual are similarly not amenable to disposition on summary
16 judgment.  Whether or not Genito intentionally discriminated
17 against Plaintiff is a question of fact.  Forcing Plaintiff to
18 investigate salacious rumors as to her own sexuality may well
19 have been intentional in that regard.  In addition, whether
20 Genito had any role in encouraging the oral complaints allegedly
21 made against Plaintiff in April of 2003 also raises a triable
22 issue of fact since much of the complained of conduct occurred
23 in late 2002, and February of 2003 at the latest.  The fact that
24 the Nelson Randolph written complaint was apparently backdated
25 to a time before Plaintiff was put on administrative leave
26 further underscores uncertainty about just exactly what
27 transpired.
28 ///

11

1  All of this precludes summary judgment in Genito's favor as to
2  Plaintiff's claims under California Civil Code § 52.1 and 42
3  U.S.C §§ 1981, 1983 and 1985.
4       Similarly, given the vast disparity in accounts of what
5  actually occurred, as outlined above, Plaintiff's remaining
6  claims against Genito also survive, including her claims for
7  intentional infliction of emotional distress, defamation,
8  interference with business, conversion, negligent hiring and
9  supervision, and invasion of privacy.  As already delineated to
10 a significant extent in this Court's prior orders, Plaintiff has
11 stated cognizable claims for those causes of action, and the
12 presence of pervasive disputed factual issues again precludes
13 summary judgment.  Those disputed issues include, but are not
14 limited to, Defendant Genito's alleged conversion of Plaintiff's
15 personal items for some five years, his alleged insistence that
16 Plaintiff herself investigate embarrassing rumors about her
17 sexual orientation and behavior with other employees, and his
18 alleged role in coercing and/or backdating complaints voiced
19 against Plaintiff by other employees.
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

For all the foregoing reasons, Defendants' Motion for Summary Judgment, or in the alternative for Summary Adjudication (Docket No. 126) is DENIED.

IT IS SO ORDERED.

Dated: December 23, 2009

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE